THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DEBRA KAY KOCH, Defendant-Appellant.

Fifth District   No. 77-275

Opinion filed October 4, 1978.

Michael J. Rosborough and Patricia L. Morris, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Patrick J. Hitpas, State's Attorney, of Carlyle (Bruce D. Irish and Martin N. Ashley, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

A jury in the circuit court of Clinton County found the defendant, Debra Kay Koch, guilty of two counts each of aggravated battery and cruelty to children. The defendant was sentenced to not less than one year nor more than three years for each count of aggravated battery with the sentences to run concurrently. No sentence was imposed for the two counts of cruelty to children. The defendant asserts the following issues on appeal: the State failed to sustain its burden of establishing the guilt of the defendant beyond a reasonable doubt; the trial court erred in excluding certain expert oral and written testimony of Craig Voorhees, a psychologist; the trial court erred by not granting the defendant a recess or continuance pending the appearance of her final witness; the trial court erred by refusing to instruct the jury as to the lesser included offense of battery; the trial court erred in entering judgment against the defendant on two counts of cruelty to children where these offenses were lesser included offenses. The defendant also asserts that the trial court abused its discretion in sentencing the defendant by denying her probation. This

issue has been rendered moot because the defendant was paroled prior to this opinion.

Paul Kauling, a caseworker for the Illinois Department of Public Aid, visited the defendant's home in Carlyle on December 8, 1976. The purpose of this visit was to redetermine the defendant's eligibility to receive public aid assistance. During this visit, Kauling saw only the defendant and her oldest son Edward who was approximately 2½ years old. Kauling noticed that Edward was severely bruised and examined the child more closely. He found Edward's face and back severely bruised and discolored. He asked the defendant how the bruises occurred and she explained that Edward fell off the couch a lot. Suspecting possible child abuse, Kauling described his visit to Michael Wilton, a child welfare worker for the Illinois Department of Children and Family Services. That same day Wilton and Jeanine Bundy, also with the Department of Children and Family Services, went to the defendant's home to examine the children. The defendant, her two sons, Edward and Harold, and Hubert McCain were present in the home when Wilton and Bundy arrived. The two boys were the defendant's natural children. Her husband left her and was living in the Belleville area. The defendant was living with Hubert McCain at this time.

The two boys were inspected and found to be bruised over massive parts of their bodies. Edward had patches of hair missing. Harold seemed much worse. His face was completely discolored and he had apparent burn marks on his neck as well as cuts on his forehead. The defendant again explained the injuries were due to the clumsiness of the children, although she admitted causing some of the bruises when she spanked them with a thin leather belt.

After this inspection, Wilton left the home and reported a possible child abuse case to the Carlyle police. Officer Clayton Mitchell accompanied Wilton to the defendant's home. Mitchell called an ambulance and the children were taken to Saint Joseph's Clinton County Hospital in Breese. Doctor Renato Rivera examined the children in the emergency room. Edward was treated and released and placed in a foster home. Harold, the younger child, was sent to St. Louis for treatment of a rapid heartbeat. In St. Louis, X-rays revealed Harold had a fractured skull, right collarbone and left arm. Doctor Laurence McBride, the pediatrician treating Harold, also was of the opinion that the marks on Harold's neck were cigarette burns. Both McBride and Rivera were of the opinion that the injuries were caused by a blunt object and were not due to tripping, falling off furniture or the normal play of children that young. The defendant was arrested the next day and charged with two counts each of aggravated battery and cruelty to children and read her rights at the Clinton County Sheriff's office.

The first issue raised on appeal is that the State failed to sustain its burden of establishing the defendant's guilt beyond a reasonable doubt. The defendant's theory is that despite the circumstantial evidence employed by the State to prove its case, the record reflected a reasonable hypothesis consistent with her innocence upon which the jury should have based its verdict. This hypothesis was that Hubert McCain was the guilty party and that the defendant attempted to cover up for him in her testimony.

Expert medical testimony established that the injuries to Edward and Harold at issue here occurred between one and two weeks prior to December 8, 1976. Testimony by the defendant and McCain revealed they were the only persons who had custody of the children at that time. No direct evidence was produced to show that McCain actually struck or abused the children. Jeanine Bundy, of the Department of Children and Family Services, had visited the defendant's home on December 8 to investigate possible child abuse. During this visit she testified that the defendant stated that McCain had never beat or whipped the children. McCain also testified that he never hit or abused the children. The defendant testified to never seeing McCain hit her children, although she did mention her children would have new red marks and bruises when she returned from the store during that two-week period. The children were always alone with McCain when she stepped out.

On direct examination, McCain stated that the defendant never hit her children other than by spanking them. However, on redirect, McCain testified about a statement he made to the police on December 8. He related how the children were thrown and shoved around the house by the defendant one or two times during the period in question. On December 7 he saw the defendant throw the children on a couch and then push them down. He mentioned that the oldest boy was hurt daily. McCain recalled instances where the defendant shouted at the children calling them little bastards and wishing they had never been born. In his testimony McCain also said the defendant had a nervous condition and smoked a lot. Testimony by Paul Kauling and Michael Wilton showed that on two separate occasions on December 8 the defendant admitted causing some of the bruises on her children. She explained that she would spank them on the buttocks with a cheap little leather belt.

The defendant testified she never beat, tossed, knocked down or burned her children. She attributed their injuries to constant tripping, falling off furniture, running into walls and fighting with each other over toys while at play. However, she did admit to having a nervous condition. She was on medication for this condition while at trial but not during the weeks prior to December 8. When she was upset, she would pound on walls or the icebox. She would even step out of the house in her efforts to

cool down. She stated that some of the little things her children did got on her nerves. When she disciplined them she would hit them across the buttocks with a thin leather belt. One other incident was mentioned in her testimony. A few days prior to December 8 McCain suggested that the children should see a doctor. The defendant refused to let McCain take them to a physician and said she could treat the children at home. The record indicates that the defendant could have obtained free medical care for her children through the Department of Public Aid.

Medical expert witnesses testified that the injuries sustained by Edward and Harold were caused by a blunt object and were not the product of an isolated occurrence. Doctor Renato Rivera examined Edward and Harold in the emergency room at Saint Joseph's Clinton County Hospital in Breese. Edward was given superficial treatment and released, while Harold was transferred to St. Louis for further treatment. Rivera was of the opinion that the injuries of both children were caused by some sort of blunt object applied at more than one point in time. He ruled out falling off furniture, tripping or playing as a cause of the injuries. Laurence McBride, a pediatric resident at Cardinal Glennon Hospital in St. Louis, who examined Harold, reiterated Rivera's testimony.

■■ The defendant's sole contention is that the circumstantial evidence at trial failed to prove beyond a reasonable doubt that it was she who caused the injuries. "The general rule is that circumstantial evidence is sufficient to convict; unless there are circumstances contradicting the reasonable inferences and conclusions drawn by the jury from such circumstantial evidence, the determination should not and cannot be disturbed. [Citation.] The jury in a circumstantial evidence case is not required to search out possible explanations compatible with innocence and elevate them to the status of reasonable doubt. [Citations.]" *People v. Stone* (4th Dist. 1977), 46 Ill. App. 3d 729, 731, 361 N.E.2d 330, 332.

■■ The circumstantial evidence in this case was sufficient to support a conviction. Only two persons, the defendant and McCain, had custody of the children, and the defendant herself testified McCain did not hit them. The defendant had a nervous condition which caused her to pound on walls or the refrigerator in order to calm down. The defendant also admitted that the children got on her nerves and that she caused some of their bruises. Medical testimony pinpointed the cause of the injuries to be a blunt object and not the result of tripping, falling off furniture or from playing as the defendant claimed.

● 3 Against the reasonable inference drawn by the jury from the totality of the facts of this case that the defendant abused her children, she claims that she lied to cover up for McCain who in fact administered the injuries. Support for this contention comes from the defendant's testimony in which she stated that her children would have new red marks and

bruises when she returned home from the store; thereby implying McCain beat them. For this theory to stand, the credibility of McCain's testimony would have to be destroyed because he claimed he did not hit the children. Thus, the defendant's position, rather than being based on facts in the record so as to contradict the reasonable inferences and conclusions drawn by the jury, eroded into a challenge of the credibility of two witnesses—the defendant and McCain. In ascertaining whether the weight and credibility of a witness' testimony was sufficient to support a verdict of guilty beyond a reasonable doubt, deference should be given to the trier of fact who heard the evidence presented and observed the demeanor of the witnesses. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631; *People v. Stewart* (1970), 46 Ill. 2d 125, 262 N.E.2d 911.) Accordingly, we will not upset the verdict rendered in this case by challenging the jury's determination of credibility where it chose to believe McCain and disbelieve the defendant's inference that McCain abused the children while she was away from home. For the foregoing reasons, we hold that the evidence in this case was sufficient to convict the defendant beyond a reasonable doubt.

The defendant's second contention is that the trial court erred by excluding certain written and oral testimony of Craig Voorhees, a master's level clinical psychologist, which pertained to the defendant's mental state at the time she made certain exculpatory statements concerning Hubert McCain. The State presented evidence that the defendant told various persons that McCain did not hit her children. The defendant tried to attack the credibility of this testimony through Voorhees in order to establish a motive for her to cover up for McCain. The testimony at issue concerned a psychological examination of the defendant conducted by Voorhees. The trial court excluded any oral testimony as to the defendant's behavioral motivation to lie for McCain. The trial court also excluded a written report of Voorhees' examination of the defendant. The defendant argues that these exculpatory statements were analogous to a confession, and therefore, she had a right to present evidence which affected the credibility of that "confession." (*People v. Scott* (1963), 28 Ill. 2d 131, 190 N.E.2d 749.) This credibility challenge centered around establishing a motive for the defendant to lie about McCain's innocence. The defendant asserts that Voorhees' testimony would have supplied that motive. He would have testified that his examination of the defendant indicated she was dependent on other people, particularly McCain. The defendant contends this testimony was highly relevant in attacking the credibility of the "confession" by demonstrating it was more probable the defendant's exculpatory statements were untrue because she did not want to lose the man she was living with.

■ The State contends that these exculpatory statements were not the same as a confession, thereby making inapplicable the general rule that a person can introduce evidence tending to discredit his confession. We agree. Exculpatory statements cannot be relegated to the status of a confession. The record shows that the defendant in statements before trial and on the witness stand, steadfastly maintained her claim of innocence. It was established at trial that the defendant and McCain had exclusive custody of the children during the infliction of the injuries. Although in the face of this evidence, the defendant's comments that McCain did not hit her children would create a strong inference of guilt on her part, such an inference did not equate to a confession.

■■ The State asserts that the exclusion was proper on the additional ground that the expert witness was not qualified to testify to the defendant's behavioral motivation because the expert was not a psychiatrist. The State cites *People v. Morthole* (5th Dist. 1977), 51 Ill. App. 3d 919, 366 N.E.2d 606, for this proposition. In *Morthole*, we held that a psychologist was not qualified to give an opinion on the fitness of a witness to stand trial or on his criminal capacity. Only a psychiatrist could testify to such matters. By analogy, a psychologist cannot be held to be an expert on behavioral motivation. For the reasons stated above, we hold that the trial court properly excluded Voorhees' testimony as it related to the behavioral motivation of the defendant.

Next, the defendant asserts that the trial court erred in failing to grant a recess or a continuance when it appeared that the defendant's final witness would not be present to testify. The defendant intended to call Ophelia Springer, of the Department of Public Aid, to the stand. Springer's testimony was to support the proposition that prior to the defendant living with McCain, no evidence of child abuse had been observed or reported to the Department. A subpoena ordering Springer to appear in court was received by the sheriff of St. Clair County on March 7. By the morning of the second day of trial, March 10, the process server informed the defendant that Springer had not yet been served. Springer was served later that day and orally told to appear in court on March 11 at 9:30 a.m. instead of March 9 as the subpoena indicated. By 10:05 a.m. on March 11, the final day of trial, Springer had not yet appeared. At this point the defendant made an offer of proof. Springer would testify that she had met with the defendant and her children on six occasions while the defendant resided in St. Clair County. The last meeting took place on June 16, 1976, at the defendant's home. Springer would testify that she perceived no bruises or marks on the children indicating injuries. However, the defendant conceded that Springer never examined the children specifically for child abuse and never viewed them while they were disrobed. The trial court deemed the evidence elicited

from this offer of proof irrelevant but held that Springer could testify if she appeared before the end of the trial. The defendant was then ordered to proceed with her next witness. Having no more witnesses to call, the defense rested. The State likewise rested.

■ The defendant argues that Springer's testimony was highly probative to her defense that McCain was responsible for abusing her children by showing that prior to her living with McCain no abuse occurred. Consequently, the defendant claims the trial court's actions amounted to denying her due process of law by not being able to call witnesses in her defense. Although the defendant made an offer of proof as to Springer's testimony, no request was made by the defendant for either a recess or a continuance pending the arrival of Springer. Where the defendant failed to request a recess or continuance pending the arrival of a witness, no error can be assigned to the trial court for not granting one. *People v. Brown* (1st Dist. 1976), 41 Ill. App. 3d 641, 354 N.E.2d 602; *People v. Ayala* (1st Dist. 1967), 89 Ill. App. 2d 393, 233 N.E.2d 80.

■ The trial court's actions are further justified by the very marginal probative value of Springer's testimony. The last visit Springer made was six months prior to the infliction of the injuries at issue here. Moreover, Springer never examined the children for bruises or other injuries and never disrobed them. The trial court's assessment of the relevancy of Springer's testimony was not an abuse of discretion and therefore, we hold the trial court acted properly in this instance. *People v. Morrissey* (4th Dist. 1975), 30 Ill. App. 3d 566, 333 N.E.2d 33.

The fourth contention the defendant makes is that the trial court erred by refusing the defendant's proposed jury instructions pertaining to the lesser included offense of battery. The trial court accepted the State's Instruction Number 5 over the defendant's objection. This instruction charged the defendant with two counts each of aggravated battery and cruelty to children. The defendant's Instructions 1 and 5 were rejected. These instructions also charged the defendant with the lesser included offense of battery. The defendant's instruction number 5 was Illinois Pattern Jury Instructions, Criminal, No. 11.06 (1968), which provided:

> "To sustain the charge of battery, the State must prove the following proposition:
>
> That the defendant knowingly or intentionally caused bodily harm to Edward Koch or Harold Koch.
>
> If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant guilty of battery upon that child.
>
> If, on the other hand, you find from your consideration of all the evidence that this proposition has not been proved beyond a

reasonable doubt, then you should find the defendant not guilty of battery upon that child."

■ Normally, it is proper to include standard instructions on the lesser included offense of battery where the defendant is also charged with aggravated battery. However, this case was unique because the person charged was the mother of the victims. Illinois has long recognized the right of a parent to use reasonable force when disciplining a child. (*People v. Ball* (1974), 58 Ill. 2d 36, 317 N.E.2d 54; *Wegener v. People* (4th Dist. 1890), 36 Ill. App. 164.) Thus, where a parent is charged with battery upon a child, the jury instruction explaining the elements necessary for a conviction of battery should include not only that the parent knowingly or intentionally caused bodily harm, but also that the amount of force used was unreasonable. This last element, unreasonable force, was not present in the defendant's Instruction Number 5 nor in any of the other tendered instructions. This omission rendered defendant's Instruction Number 5 an incomplete statement of the law. A jury instruction does not accurately state the law where it states part of the law but not all of it, and such an instruction may be properly refused. (*People v. Hughes* (1st Dist. 1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363.) Likewise, where two instructions are necessary to set out all of the law on a subject but only one is tendered, that instruction is properly refused. (*People v. Shinn* (3d Dist. 1972), 5 Ill. App. 3d 468, 283 N.E.2d 502.) Nor is the trial court under any duty to give an additional instruction on its own motion. (*People v. Colon* (1st Dist. 1973), 9 Ill. App. 3d 989, 293 N.E.2d 468.) Therefore, we hold that the trial court did not err in refusing the defendant's jury instructions on the lesser included offense of battery.

● 11 The last issue raised by the defendant is that the trial court erred in entering judgment against the defendant on two counts of cruelty to children because the offense of cruelty to children was a lesser-included offense of aggravated battery. The State does not challenge the defendant on this issue. The defendant's conviction of two counts of cruelty to children was based on the same circumstantial evidence which supported her conviction of two counts of aggravated battery. Since these offenses arose out of the same conduct, it was improper to convict the defendant on both the greater offense of aggravated battery and the lesser offense of cruelty to children. (*People v. Holmes* (4th Dist. 1973), 13 Ill. App. 3d 955, 301 N.E.2d 316.) Accordingly, we affirm the conviction of the defendant of two counts of aggravated battery and we reverse the conviction of two counts of cruelty to children.

Affirmed in part; reversed in part.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.