THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LEE, SR., Defendant-Appellant.

Third District    No. 79-940

Opinion filed May 30, 1980.

Robert Agostinelli and Stephen Omolecki, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial in the circuit court of Peoria County, the defendant was found guilty of committing a battery on his 10-year-old son and was sentenced to six months' court supervision, fined $100 and ordered to pay costs. In this appeal the defendant raises issues concerning the sufficiency of the evidence, the propriety of prosecutorial comments during closing argument and the completeness of the jury instructions.

At the trial the State presented its case through the testimony of two witnesses. The first witness was Sharon Redshaw, a special education teacher in Peoria, Illinois. Mrs. Redshaw testified that at about 11 a.m. on April 24, 1978, one of her students, Robert Lee, Jr., was sent home from school. When he returned to school at about 12:30, Mrs. Redshaw noticed welts on his arms, a bandaid on his face and some blood in his ear. Robert, Jr., would not respond when she asked him what was wrong, so the witness reported to the principal. In the principal's office Mrs. Redshaw observed Robert, Jr., with his shirt off and a wet towel on his back. She testified that the child's back had long welts on it, some of which were broken and bleeding.

A representative from Child and Family Services was summoned to the school. Sometime afterward a policeman was also called to the school. Mrs. Redshaw identified People's exhibit 1A as a photograph of Robert Lee, Jr. She also identified the defendant as the child's father.

Robert L. Ball was the second witness to testify for the State. Ball, a juvenile officer in the Peoria Police Department, was summoned to a grade school on April 24, 1978. In the principal's office Officer Ball met Robert Lee, Jr. The witness observed numerous welts on the boy's back. The welts looked like red marks in a loop shape. Ball also noticed a cut, which was bleeding slightly, on the boy's left ear. Robert, Jr., was taken to a hospital, where photographs were taken in the presence of Officer Ball. People's exhibits 1A, C, D, G, L and N, identified as photos of Robert, Jr., and various parts of his body, were admitted into evidence.

After the photographs were taken Officer Ball went to the police station where he interviewed Mrs. Lee and the defendant. Ball had known the defendant for a couple of years, as the latter was also a Peoria police officer. *Miranda* warnings were read to the defendant, who indicated that he wished to talk. Officer Ball informed Lee that he was investigating a possible child abuse involving Robert, Jr. The witness told Mr. Lee that he knew young Robert had been sent home from school earlier that day. He asked the defendant what happened during the time that Robert, Jr., was at home.

The defendant told Ball that someone from the school had called, informing him that his son had a $10 bill and asking if it was all right that Robert, Jr., had the money. The defendant replied that it was not all right and asked that the boy be sent home. The defendant knew that his son had taken the money from his wallet because the night before he had put a $10 bill in his wallet which had been left on the bedroom dresser. After receiving the call from the school the defendant checked the wallet and found the bill was missing. When the boy arrived at home the defendant asked his son where he had gotten the money. The boy replied that he had found the money in a patrol area. The defendant talked to his son for a period of time and continued to ask him where the money had come from, but Robert, Jr., continued to lie, saying that he had found the money. Finally, the defendant told his son to get an extension cord from the kitchen.

When the boy came back with the extension cord, he was told to take off his clothes except for his underwear. Once more the defendant asked about the money and again his son lied to him. The defendant then struck his son three times before asking again about the money. Robert, Jr., lied and was struck another time. The defendant could not recall how many times he had struck his son. Officer Ball asked the defendant if he had become emotionally involved and lost control. The defendant replied in the negative, stating that he had known what he was doing. The defendant also stated that he had struck his son in the legs and that the boy "flounced" around as he was hit.

During cross-examination Officer Ball testified that he knew the body in the photographs was Robert, Jr.'s, because he remembered the injuries and he had been present when the pictures were taken. The defendant had not been confronted with the photos when he was questioned by Ball nor at any time thereafter. Mr. Lee was not asked if he had caused any particular mark or welt on the boy's body.

The People rested at the conclusion of Ball's testimony. After defendant's motion for a directed verdict was denied, the defense also rested.

A conference on instructions was followed by the closing arguments of counsel. At one point the prosecutor told the jury that what was done to

Robert, Jr., should not be done to a dog. The Assistant State's Attorney also said that the defendant "wanted the truth out of his son, and he was going to do whatever he wanted and however far it took to get the truth out of his son, and he finally got it." The prosecutor then asked the jury to consider what might have happened if the boy had not finally told the truth. If he was punished as he was for stealing $10, the prosecutor asked, "* * * can you imagine what it might have been if it was $50." Finally, in commenting on Officer Ball's testimony that he recalled Robert, Jr.'s, injuries, the prosecutor asserted that Ball would never forget those wounds; that he would probably remember them for the rest of his life. He also commented that Robert, Jr., would never forget the injuries.

It is first argued by the defendant that he was not proven guilty beyond a reasonable doubt. The evidence here establishes that the defendant's son was sent home at the defendant's request. During that time the defendant beat the boy with an extension cord. When the boy returned to school his teacher observed his wounds and reported to the authorities. Pictures of the boy's body, taken the same day, were exhibited to the jury. The defendant presented no contradictory evidence.

■■ Yet, the defendant argues the State proved neither that all the injuries depicted were inflicted by the defendant, nor that the use of unreasonable force was established. We disagree. The jury could find from the testimony presented that the defendant inflicted the wounds depicted, and from these pictures the jury could infer that the force used was unreasonable. While it is true that the presumption of innocence can not be overcome by speculation, conjecture, innuendo or mere probabilities (*People v. Howard* (1979), 74 Ill. App. 3d 870, 393 N.E.2d 1084), where the defendant admittedly beat the child, as here, the State need not meet the unreasonable burden of proving that each mark on the child's body was made by the defendant or that the injuries could not have been caused by any other event.

The second issue raised by the defendant concerns the propriety of certain prosecutorial comments made during closing argument. In response the State points out that the defendant did not object to any of the comments now complained of and, although the defendant's post-trial motion alleged impropriety in the prosecutorial argument, the defense counsel presented no argument to the trial court on this point of his post-trial motion. In *People v. Smith* (1977), 52 Ill. App. 3d 583, 367 N.E.2d 756, at the time the comments complained of were made, there were no objections by the defense, and even though the issue of alleged impropriety was presented in a post-trial motion, the consideration of the issue was found to have been waived in the absence of a determination that the comments were plainly a material factor in the defendant's conviction and substantially prejudiced his right to a fair trial.

■■ We have examined the prosecutor's remarks in light of the entire record. Without ruling on the propriety of each, we find that no individual comment of the prosecutor, nor their cumulative effect, substantially prejudiced the defendant so as to deprive him of a fair trial. Therefore, we consider the issue waived for purposes of review.

Another issue raised by the defendant is whether the trial court erred by failing to instruct the jury on the definition of "without legal justification" as it relates to the disciplining of a child. Specifically, the defendant objects that the jury was not instructed that a parent acts without legal justification in disciplining his child only where the force used is unreasonable. Once again the State argues that the consideration of the issue has been waived.

■■ The defendant did not tender an instruction concerning parental justification, nor did he object to the instruction tendered by the State. Therefore, the consideration of this issue has been waived. (*People v. Spataro* (1978), 67 Ill. App. 3d 69, 384 N.E.2d 553.) Furthermore, the Illinois Supreme Court has stated that the trial court has no duty to give such an instruction *sua sponte*, and the failure to give such a definitional instruction is not a substantial defect. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233; see also *People v. Koch* (1978), 64 Ill. App. 3d 537, 381 N.E.2d 377.

Lastly, the defendant argues that the defendant was denied his right to effective assistance of counsel by defense counsel's failure to object to the prosecutor's comments during closing argument and by the failure of said counsel to tender the instruction above discussed. The Illinois Supreme Court also addressed this issue in *Carlson.* There the court found that since the failure to tender the instruction did not result in substantial prejudice and since Rule 615(a)(Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)) protects the defendant from being substantially prejudiced in any event, the defendant failed to establish actual incompetence of counsel resulting in substantial prejudice without which the outcome would probably have been different.

■■ While the discussion in *Carlson* directly disposes of the present issue as it relates to the failure to tender the instruction, it is also persuasive as to the failure to object to the prosecutor's comments during closing argument since the defendant was not substantially prejudiced by those comments. As a result, the defendant has failed to establish such actual incompetence of counsel as would require a new trial.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.