THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES MONTGOMERY, Defendant-Appellant.

First District (2nd Division)    No. 76-218

Opinion filed October 4, 1977.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Paul B. Linton, and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

Defendant, Charles Montgomery, was found guilty, after a bench trial, of the offense of the attempted theft of an automobile (Ill. Rev. Stat. 1973, ch. 38, par. 8—4(a)). The circuit court of Cook County sentenced him to two years probation. Defendant submits two primary issues on appeal: (1) that the trial court erred in denying his motion to suppress the arrest; (2) that the defendant was not proven guilty beyond a reasonable doubt, because the State failed to prove the necessary intent and failed to prove a specific overt act had been taken toward the commission of the offense.

At the trial, the complainant Douglas Bell, testified that: on October 12, 1975, at approximately 3:30 p.m., he was visiting at a hospital located at California and Ogden Avenue, in the City of Chicago; he parked his 1967 Lincoln, which he had driven to the hospital, at the corner of California Avenue; the car was in good condition when he locked it up; there was no damage to the ignition and there was a stereo tape player mounted under the dash; when he returned to his car between 5 and 6 p.m., he observed the defendant leaning over the steering wheel "as though he were tampering with something"; he yelled at the defendant and asked him "what was he doing in there"; the defendant looked up, grabbed the tape player, exited the vehicle, and began running across Douglas Park; he entered his vehicle and proceeded across California Avenue in an attempt to cut the defendant off in the parking area; he noticed at this time that the ignition ring, which was previously intact, was now missing and that the ignition was damaged, and that two tape cartridges were missing; when he arrived at the parking area, he noticed that plain clothes detectives "had him," the defendant.

On cross-examination, Mr. Bell testified that: the tape player was located approximately 12 inches from the ignition and that it could be removed without tools; he did not believe that the key ring, which was previously located around the ignition, could be removed without tools; approximately 5 to 10 minutes elapsed from the time he first observed the defendant inside his car until the time he was in the custody of the police officers; during this time period he lost sight of the defendant only once, for a "couple of minutes."

Officer McNichols of the Chicago Police Department testified that: at the time in question, he and his two partners, all of whom were in plain clothes, were on the way to the police station, when they observed the defendant running across Ogden Avenue with a tape player, "clutching it towards his chest"; he was approximately 50 to 100 feet away from the defendant, exited his vehicle, identified himself as a police officer and ordered the defendant to halt; the defendant merely turned and looked at him and continued to run, causing him to pursue the defendant on foot, with the two police partners following in their vehicle; after a two-minute chase, the defendant was apprehended by the officers; he, Officer McNichols personally stopped the defendant but at that time he did not have any knowledge that a crime had been committed; he asked the defendant why he didn't stop; the defendant failed to respond; he also asked the defendant whether he owned the tape player; he didn't recall whether or not the defendant answered; at that time, the victim, Mr. Bell, arrived at the scene; Bell, referring to the defendant exclaimed, "that man's got my tape player and he was in my car"; the defendant was placed under arrest, advised of his rights and searched; he recovered two tape cartridges from the defendant's person, as a result of the search, and the tape player which was in "plain view"; at no time during the course of the chase or arrest did he draw his service weapon; upon searching the victim's automobile, he discovered that the ignition was damaged and that the retaining ring which must be taken off in order to "pop" the ignition, was missing; Mr. Bell stated that this damage did not exist prior to his going into the hospital.

At the close of the State's case, the defendant moved to quash his arrest and suppress the evidence seized pursuant to this arrest. Following argument on the motion, it was denied.

The defendant, Charles Montgomery, testified that: he and his friend were walking on Cermak Avenue when his friend noticed a tape player that was inside a 1967 Lincoln; his friend wanted to take the tape player but the defendant told him "I don't want anything to do with it" and went across the street to the park; his friend entered the vehicle, and pulled out the tape deck and cartridges which were on the dash; his friend then walked across the street, gave the defendant the tape player and apparently seeing Mr. Bell, told him to run; he and his friend ran in opposite directions; he never saw a police car on the corner of Ogden Avenue nor did he hear "any police officers holler anything"; he did not see his friend use any tools nor did he himself have tools on his person, on that date; he did not notice the ignition ring on Mr. Bell's automobile and he never attempted to remove the ring from the vehicle.

On cross-examination, the defendant testified that he only took the tape

player from his friend to look at it, and that this tape player was unusual in that it had a handle.

Defendant first contends on appeal that the trial court erred in denying his motion to suppress the arrest. Specifically, the defendant contends that there was no specific and articulable facts to justify the officer's original detention of defendant, as mandated by the court in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. The court there emphasized that the stop itself must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.) The objective determination to be made is whether * * * "the facts available to the officer at the moment of seizure * * * 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio*, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.

In our State the rule in *Terry* has been codified in section 107-14 of the Code of Criminal Procedures (Ill. Rev. Stat. 1975, ch. 38, par. 107-14), which provides:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped."

Specifically, defendant contends that the police officer's observation of him running across the street "clutching" a portable radio was insufficient to show that he "[was] committing, [was] about to commit or [had] committed a crime." Ill. Rev. Stat. 1975, ch. 38, par. 107—14.

The State contends that the defendant's running across the street in a high crime area with a tape player clutched to his chest coupled with the fact that he refused to stop upon the officer's request, was sufficient to give rise to an inference that a crime had been or was being committed. The State further contends that these facts and circumstances satisfied the above standard justifying the officer's temporary detention of the defendant for questioning.

The State's position is in accord with recent Illinois decisions and past precedent. In *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488, the Illinois Supreme Court held that the statutory provision (Ill. Rev. Stat. 1975, ch. 38, par. 107—14) was intended to codify the holdings of *Terry v.*

*Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, and was not intended to be more restrictive than the guidelines set forth in those cases.

*Terry* and subsequent Illinois cases (see *People v. Ussery* (3d Dist. 1974), 24 Ill. App. 3d 864, 321 N.E.2d 718) have held that unlike an arrest situation, a police officer may in appropriate circumstances and in an appropriate manner approach a person and make a threshold inquiry for the purposes of investigating possible criminal behavior without probable cause. In this context, it has been held that a conversation between a citizen and a police officer does not constitute a restraint of liberty. (*People v. Colon* (1st Dist. 1973), 9 Ill. App. 3d 989, 293 N.E.2d 468.) Moreover, conduct by a police officer whereby he identifies himself and subsequently requests a person to stop or "halt" does not necessarily amount to an arrest. *People v. Jordan* (1st Dist. 1976), 43 Ill. App. 3d 660, 357 N.E.2d 159; *People v. Beall* (4th Dist. 1976), 42 Ill. App. 3d 452, 355 N.E.2d 756.

*Terry* articulated a two-step analysis for determining whether a police officer's action was justified at its inception: first, there must be specific articulable facts warranting the intrusion; second, the circumstances warranting the intrusion must be based upon the officer's reasonable belief in light of his experience, that criminality is afoot and the scope of the intrusion must be related to these circumstances.

The officer's conduct in the case at bar comports with the above-mentioned standard. In addition to the defendant's suspiciously running across the street clutching a radio, it has been held in some instances, that flight from an identifying officer subsequent to an initial stop is sufficient to provide probable cause for an arrest. (See *People v. Beall* (4th Dist. 1976), 42 Ill. App. 3d 452, 355 N.E.2d 756; *People v. Staples* (1st Dist. 1971), 1 Ill. App. 3d 922, 275 N.E.2d 259; *People v. Cribbs* (1st Dist. 1972), 8 Ill. App. 3d 750, 291 N.E.2d 326.) Moreover, the defendant's flight on foot from officers in itself, has been held to provide the articulable facts necessary to justify an investigatory stop. *People v. Clay* (1st Dist. 1971), 133 Ill. App. 2d 344, 273 N.E.2d 254; *People v. Basiak* (1st Dist. 1977), 50 Ill. App. 3d 155, 365 N.E.2d 570.

■■ In the case at bar, defendant's suspicious conduct coupled with his flight from the officer gave rise to an inference of his criminal activity justifying his initial detention for questioning. Thereafter, the victim's arrival on the scene and subsequent identification of defendant as the person he had seen tampering with his automobile was sufficient to establish probable cause for his arrest.

Defendant next contends that he was not proven guilty of attempt theft of an automobile beyond a reasonable doubt. He argues that the evidence

adduced at trial failed to establish his intention of stealing a car and at the most showed his intention of stealing a tape player. He further asserts that the only evidence produced by the State at trial showed that the black and chrome ring around the ignition was missing, and that the record was devoid of evidence establishing that he possessed the tools needed to effectuate its removal.

In Illinois, in order for a defendant to be convicted of the offense of attempt, the State must establish two elements beyond a reasonable doubt: (1) that the defendant intended to commit an offense; and (2) the defendant took a "substantial step" towards committing that offense. (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(a).) Although section 8—4(a) does not define "substantial step," the Illinois courts have attempted to make the terms more precise.

In *People v. Lonzo* (1974), 59 Ill. 2d 115, 117, 319 N.E.2d 481, 483, our Illinois Supreme Court considered the case of a defendant charged with attempt theft after he was alleged to have attempted to exert unauthorized control over bicycles in a bicycle storage area. Justice Schaefer, speaking for the court, noted initially that it is not possible to charge an inchoate offense with the same particularity as a completed offense, and concluded that the record adequately established the defendant's guilt, emphasizing that he was apprehended inside an enclosure which he had unlawfully entered in order to commit the offense of theft.

Very recently, in *People v. Burleson* (4th Dist. 1977), 50 Ill. App. 3d 629, 365 N.E.2d 1162, the court, in discussing *Lonzo* and other cases dealing with the offense of attempt, opined: "Analysis of these cases would seemingly lead one to suspect that the 'substantial step' requirement, in order to amount to mere preparation, requires some sort of entry into an enclosure or structure for the purpose of committing a crime." (*Burleson*, at 632.) It has also been held in cases dealing with the offenses of theft and attempt theft that the defendant's intent to deprive the owner of the use and benefit of his property can be inferred from the facts and circumstances surrounding the alleged criminal act. *People v. McClinton* (1st Dist. 1972), 4 Ill. App. 3d 253, 280 N.E.2d 795; *People v. Carr* (4th Dist. 1973), 16 Ill. App. 3d 76, 305 N.E.2d 554.

In *People v. Brown* (1st Dist. 1975), 26 Ill. App. 3d 953, 326 N.E.2d 99 (abstract), a prosecution for attempt theft and criminal damage to property, the court held that evidence that the accused was observed jumping from a railroad car in which was situated a trailer which had been broken into, and running from the scene, that some merchandise from the trailer was missing and broken, and that the railroad car had been secure prior to the incident, was sufficient to prove accused's guilt

beyond a reasonable doubt, notwithstanding the accused's contention that the evidence merely established his presence at the scene of the alleged offenses.

The case of *People v. Blahuta* (1st Dist. 1970), 131 Ill. App. 2d 200, 264 N.E.2d 819, although involving the offense of attempt burglary, did consider the same contention as is put forth in the case at bar, that there was no direct evidence of the defendant's intent to commit the offense. The court held that there were sufficient facts presented to warrant the inference of the requisite intent of the defendant, noting the jimmied basement door, wood chips on the ground, the finding of the crowbar leaning against the same door, and the defendant's late night presence at the basement door, all of which were facts from which reasonable inferences could be drawn that defendant had taken substantial steps toward the commission of a burglary. The court further emphasized that the defendant's explanation of his presence was unsubstantiated, and it concluded that it seemed probable that in view of the acts already committed by the defendant, that the completed offense would have been achieved if he had not been interrupted.

In a case factually analogous to the case at bar, *People v. Sparks* (1st Dist. 1972), 9 Ill. App. 3d 470, 292 N.E.2d 447, the indictment charged the defendant with attempted theft of an automobile. The defendant contended that the State failed to prove that he intended to deprive the owner permanently of the use or benefit of the property. The court stated that there was sufficient proof in the record that the defendant took a substantial step toward the commission of the crime of theft and, therefore, intended to deprive the owner permanently of the use or benefit of the property. Included in the evidence relied upon by the court was the testimony of a police officer, who was answering the radio call of a suspicious character in the area, and who stated that he saw the defendant leaving the car, and that the officer examined the interior of the car and found the ignition was broken.

■■ In the case at bar, the facts show that when Mr. Bell returned to his car, he saw the defendant in it, and defendant was "tampering with something." After the defendant ran into the park, Mr. Bell got into the car and discovered that the ignition ring had been removed in an apparent attempt to "pop" the ignition. However, the defendant urges that the removing of the tape player is inconsistent with an intent to steal the car. The State replies, and we concur, that it is consistent with an intent to steal the car and yet have the tape player ready for quick removal, in case the attempt to steal the car was interrupted, as in fact it was, in this case, by the owner of the car.

In addition, the removing of the ignition ring is inconsistent with an intent to commit the offense only of the theft of a tape player. Although it

is true that no tools that could have been used to remove the ignition ring were recovered from the defendant after his arrest, this is only one factor to be taken into account. (See *People v. Sparks* (1st Dist. 1972), 9 Ill. App. 3d 470, 292 N.E.2d 447.) We must also consider the fact, that in this instance there was a chase through an adjoining park and it is reasonable to infer that the defendant could have disposed of a small tool in this park without being detected. The evidence as a whole, and especially the act of dislodging the retaining ring, clearly established both the requisite intent and the substantial step toward commission of the crime of attempt theft of an automobile.

It is well established in our State that a trial judge, sitting without a jury, is in the best position to determine the weight and credibility to be afforded the testimony of the witnesses, and unless the determination is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt as to guilt, the trial court's decision will not be disturbed on appeal. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Walker* (1st Dist. 1977), 47 Ill. App. 3d 737, 365 N.E.2d 428; *People v. Owens* (1st Dist. 1977), 45 Ill. App. 3d 1012, 360 N.E.2d 481.) It has also been held that on review, the appellate court will not disturb the finding of guilt unless it is palpably contrary to the weight of the evidence. *People v. Reese* (1973), 54 Ill. 2d 51, 59, 294 N.E.2d 288.

A review of the evidence of this case, does not prevent an abiding conviction of guilt; nor can we say that the evidence was so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.