(No. 49985.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. LEONARD HOLDMAN *et al.*, Appellees.

*Opinion filed October 6, 1978.*

214

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger and Myra J.

Brown, Assistant State's Attorneys, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Andrew Berman, Assistant Defender, of the Office of State Appellate Defender, of Chicago, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendants Leonard Holdman and DeWayne Williams were convicted of armed robbery in a jury trial in the circuit court of Cook County and each was sentenced to a term of 4 to 6 years' imprisonment. On appeal, the Appellate Court for the First District reversed on the basis that the defendants' arrests were made without probable cause, and their subsequent identifications as armed robbers should have been suppressed as the fruit of the improper arrests. (51 Ill. App. 3d 484.) We allowed the State's petition for leave to appeal.

The facts of this case are detailed in the opinion of the appellate court and will be reiterated here only so far as is necessary to our opinion. At approximately 12:30 a.m. on February 4, 1973, Willie Ross was robbed at gunpoint by two men. Ross called the police, and at about 12:50 Officers Colton and Stien of the Chicago Police Department arrived and interviewed him. Ross told the officers what had happened and described the robbers as two Negroes in their late teens, between 5 feet 8 inches and 5 feet 10 inches tall, wearing dark jackets. Ross further informed the police that the two men had fled in an older model Buick driven by a third person.

After 15 to 20 minutes, Ross' interview with the officers was interrupted by a police radio call requesting assistance with a chase in progress. Responding thereto, the officers drove to the scene of the chase with Ross still in the back seat. When they arrived on the scene, they

observed, *inter alia,* a Buick which had crashed into a viaduct. The officers got out of their car to investigate, telling Ross to remain in it. But Ross, believing the Buick was the same car used by the robbers, left the car and followed the officers. Three men were seated in the back seat of one of the squad cars and were clearly visible to Ross because the interior light of the car was on. Upon approaching the car, Ross immediately and voluntarily identified two of the men, the defendants here, as the men who had robbed him.

The apprehension of the defendants and the fortuity of their being held in the back seat of the squad car constitute the crux of this case. While on a routine patrol in their marked squad car, Officers Hamel and Hofer of the Chicago Police Department had noticed a Buick Skylark which they believed to be associated with Orlando Page, for whom they had an arrest warrant for armed robbery. The officers pulled alongside the Buick as it traveled down the street, and shined their spotlight into the vehicle. The officers clearly saw and later identified the driver of the Buick as Robert Toney, a co-defendant who was found not guilty of the armed robbery charge at trial. They saw a second person on the passenger side whom they could not identify. In response to the spotlight, Toney looked over at the marked squad car and then accelerated rapidly.

A high-speed chase ensued with the police utilizing their Mars light and siren. At one point, after failing to negotiate a turn, the Buick stopped. Using their spotlight, the police clearly saw the front-seat passenger whom they later identified as defendant Williams. As the officers left the squad car, Toney accelerated the Buick in reverse; the officers reentered the squad car, and, after a brief chase, the Buick crashed into a viaduct. The officers, temporarily blinded by the crashed car's bright lights, saw one man flee the car and run into a field. After calling for assistance, the officers commenced chasing on foot all three men whom

they then saw running through the field. The three ran around a corner and were temporarily out of the officers' sight, but were stopped by investigators who had arrived at the scene in response to the call for assistance. Officers Hamel and Hofer arrived moments later and told the investigators that the three were the men they were chasing. The three were searched and placed in the investigators' car, driven back to the crash scene, and then transferred to the marked squad car. Shortly thereafter, Officers Colton and Stien arrived with Ross, the armed robbery victim, and the identification already described was made.

The crucial issue in this case is whether the police had probable cause to arrest Holdman and Williams. The defendants contend, and the appellate court agreed, that there was no probable cause for their arrest, and the subsequent crash-scene and in-court identifications should therefore have been suppressed. Defendants argue that the investigation of Orlando Page, which initially caused the police to shine their spotlight into the Buick, was perhaps grounds for an investigatory stop under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, but was insufficient to arrest defendants, who had no known association with Page. Further, defendants argue that as passengers they are not responsible for the traffic violations of the driver; and that under the doctrine of *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, mere flight from the crash scene is insufficient to constitute grounds for a warrantless arrest. Finally, defendants contend the arrests are not supportable by reference to Illinois' statute prohibiting resisting or obstructing the duties of a police officer (Ill. Rev. Stat. 1973, ch. 38, par. 31–1), because the policemen's acts were not authorized and the defendants did not know that they, or others, were being investigated. Accordingly, the ultimate conclusion of defendants' logic is that the police

should have released them immediately after it was ascertained that neither of them was the driver of the chased vehicle and that Orlando Page was not present.

The State, on the other hand, believes the detention of the defendants was lawful and that the subsequent crash-scene identification was properly admitted by the trial court. The State views the initial shining of the light into the car in which defendants were riding as justified on the grounds of the car's believed connection with a fugitive for whom the officers had a warrant. The State also urges that the officers were justified in pursuing the car on any of several grounds when it accelerated rapidly in an obvious effort to flee them: to continue their investigation of Orlando Page because they had not yet identified all the occupants of the car, to investigate why the persons were fleeing the police, or to enforce the traffic laws which were being violated. Additionally, the State contends the officers were justified in arresting the defendants, particularly after their on-foot flight, for a violation of section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 31—1), relating to resisting or obstructing a police officer. For any of these reasons, the State argues, the officers were justified in detaining the defendants and transporting them back to the crash scene. Thus, urges the State, the crash-scene identification of defendants, although somewhat fortuitous, was legal and therefore properly admitted at trial.

We agree with the State for a number of reasons. We see no valid reason to overturn the trial court's determination that the Buick's believed connection with a fugitive provided reasonable grounds for the shining of the light into the car in which defendants were riding. There is authority to support the proposition that this initial inquiry was insufficient to constitute a "stop" because there was no coercion or threat of coercion by the officers; and thus they were simply performing their official duty.

(*E.g., People v. Jordan* (1976), 43 Ill. App. 3d 660; *People v. McGarry* (1973), 10 Ill. App. 3d 570.) Even if the shining of the light is sufficient to constitute a "stop," it was permissible for the purpose of investigating possibly criminal behavior even though there was no probable cause to make an arrest. (Ill. Rev. Stat. 1973, ch. 38, par. 107—14; see also *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The objective determination to be made is whether "the facts available to the officer at the moment of the seizure *** 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." (*Terry v. Ohio,* 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) Certainly police officers must be permitted to shine a light into a car they reasonably believe to be associated with a fugitive in an effort to determine if that fugitive is present in the vehicle.

The flight immediately following the officers' shining of the light was a strong indication there was criminal activity afoot, and, in our judgment, required police pursuit. The defendants were directly implicated by their on-foot flight through the field following the crash of the vehicle in which they were riding. There is persuasive support for the proposition that flight from a clearly identifiable police officer may, dependent upon the circumstances, be sufficient to provide probable cause for an arrest. (See *Sibron v. New York* (1968), 392 U.S. 40, 66-67, 20 L. Ed. 2d 917, 936-37, 88 S. Ct. 1889, 1904-05; *People v. Addison* (1977), 56 Ill. App. 3d 92; *People v. Montgomery* (1977), 53 Ill. App. 3d 298; *People v. Beall* (1976), 42 Ill. App. 3d 452; *People v. Staples* (1971), 1 Ill. App. 3d 922.) Moreover, it is clear to us that the defendants' on-foot flight from the officers provided the articulable facts necessary to justify an investigatory stop under the *Terry* doctrine embodied in our statute. (See *People v. Montgomery* (1977), 53 Ill. App. 3d 298.) Thus, even had these defendants, once captured, been merely

temporarily detained, the officers would nevertheless have been entitled to return them to the crash scene to complete their investigation and their identification by Ross would have ensued.

We believe, too, that the arrests were proper based on the defendants' attempt to elude the police in violation of our statute prohibiting restricting or obstructing a police officer:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." (Ill. Rev. Stat. 1973, ch. 38, par. 31—1.)

This section has been broadly defined by this court to include any "physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties." (*People v. Raby* (1968), 40 Ill. 2d 392, 399, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867.) Flight, as in the instant case, is definitely a physical act within the purview of this statute. See *People v. Carroll* (1971), 133 Ill. App. 2d 78.

A warrantless arrest is an authorized act within the officer's official capacity if the officer has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c).) Here, Officers Hamel and Hofer personally witnessed the defendants' flight in violation of the resistance statute and thus the "reasonable grounds" are undeniably present. The officers were both in uniform, in a marked police car, and, as the chase began, they activated the squad car's emergency light and siren. It is obvious the defendants knew they were being pursued by the police, and they were accordingly under a duty imposed by the resistance statute not to oppose the officers' efforts. (See *People v. Locken* (1974), 59 Ill. 2d

459.) Thus, we believe the defendants' arrests were justified based upon the circumstances surrounding their violation of the statute. The fact that a formal charge of resisting or obstructing a police officer was never made does not detract from our conclusion in light of the supervening events concerning the armed robbery charge.

We believe the defendants' reliance upon *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407, is misplaced because of obvious factual distinctions. Defendants contend *Wong Sun* establishes that flight does not justify an inference of guilt sufficient to generate probable cause for an arrest. That case involved agents, acting upon a tip concerning drugs, who approached a building containing the laundry business and home of defendant James Wah Toy. When Toy answered an agent's knock at the door, the officer ostensibly identified himself as a customer. Toy responded that his establishment was not open and started to close the door. As the agent began to identify himself as a law-enforcement officer, Toy slammed the door and retreated down the hallway through the laundry and into the living quarters. The Supreme Court, citing the agent's failure to adequately identify himself, determined the defendant's flight into his own apartment "signified a guilty knowledge no more clearly than it did a natural desire to repel an apparently unauthorized intrustion." (371 U.S. 471, 483, 9 L. Ed. 2d 441, 452, 83 S. Ct. 407, 415.) The facts and circumstances of the flight of defendants here transcend the *Wong Sun* rationale, especially in conjunction with our resistance statute.

We are unable to accept defendants' contention that following the high-speed chase in the automobile and the on-foot chase through the field, the officers were left with no alternative but to release the defendants when it was ascertained that they were not driving the chased vehicle and the fugitive whose search initiated the inquiry was not

present. At the very least we believe it imperative that the officers be able to transport the defendants back to the crash scene where the officers could complete their investigation by examining the automobile. Ironically, it is this specific transporting back to the crash scene which facilitated the identification of defendants by the armed robbery victim and which defendants now protest.

Our decision renders it unnecessary to review the appellate court's determination that Ross' in-court identification of the defendants was not established by clear and convincing evidence to be independent of the crash-scene identification.

We therefore hold the circuit court properly admitted the crash-scene identification of defendants into evidence. The appellate court's erroneous determination that the arrests were improper and the subsequent identifications therefore inadmissible rendered it unnecessary for that court to consider other contentions raised by the defendants. Accordingly, the judgment of the Appellate Court for the First District is reversed and the cause is remanded to that court for a consideration of those other contentions.

*Reversed and remanded, with directions.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent and would affirm the judgment of the appellate court. I agree with the appellate court that these defendants "did not flee *after* being stopped or arrested. They were merely the passengers of a car being chased by the police." (51 Ill. App. 3d 484, 489.) The reason stated for shining the light into the automobile in which defendants were riding was that the officers believed the vehicle to be one used on prior occasions by Orlando Page, for whom they had a warrant. Obviously the pursuing police officers knew immediately upon apprehending defendants that Orlando Page was not present, and I fail to

perceive what made it "imperative that the officers be able to transport the defendants back to the crash scene where the officers could complete their investigation by examining the automobile" (73 Ill. 2d at 224). Obviously they could have examined the automobile without the presence of these two defendants.

The majority cites *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, in support of the proposition that "flight from a clearly identifiable police officer may, dependent upon the circumstances, be sufficient to provide probable cause for an arrest." (73 Ill. 2d at 221.) In *Sibron*, the Supreme Court said, "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea* and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." (392 U.S. 40, 66-67, 20 L. Ed. 2d 917, 937, 88 S. Ct. 1889, 1904.) This record is utterly devoid of any evidence that the pursuing police officers were possessed of "specific knowledge" which they could couple with the defendant's flight in order to justify the decision to make the arrest.

The majority's reliance upon *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, to find probable cause for arrest is misplaced. *Terry* is authority for the proposition that the fourth amendment authorizes intrusions upon constitutionally guaranteed rights less than arrests, and the circumstances which under *Terry* give rise to a permissible search fall far short of probable cause for an arrest. The permissible scope of police action authorized by *Terry* might arguably have permitted interrogation at the scene but cannot be stretched to include returning these defendants to the place where Ross identified them.

The appellate court pointed out correctly that on the

night in question "Ross could only give a general description of his robbers as two male Negroes in their late teens, between 5 feet 8 inches and 5 feet 10 inches tall, wearing dark jackets." (51 Ill. App. 3d 484, 491.) In contrast, his description at trial was much more detailed, and I agree with the appellate court that his "in-court identification was directly affected by his viewing of the defendants just after their illegal arrest." 51 Ill. App. 3d 484, 491.