THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND JACKSON *et al.*, Defendants-Appellants.
First District (1st Division)    No. 79-1597

Opinion filed June 1, 1981.

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Richard F. Burke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:
Raymond Jackson and Gregory Holmes were charged by indictment

with attempt armed robbery, burglary, and armed violence. After a bench trial, both were found guilty of all charges and sentenced to the Illinois Department of Corrections for concurrent terms of nine years for armed violence, six years for attempt armed robbery, and four years for burglary. Defendants appeal.

On appeal defendants argue that (1) their motion to quash their arrests and suppress evidence should have been granted; (2) they were not proved guilty of armed violence beyond a reasonable doubt; and (3) their convictions for burglary should be reversed because burglary is a lesser-included offense of armed violence.

We affirm in part and reverse in part.

The crimes for which defendants were tried occurred at approximately 5:15 a.m. on May 31, 1978, at the rectory of Our Lady of Angels Church. Defendants were arrested later that morning at another location after police responded to a burglary report.

Officer Vivirito testified at the hearing on defendants' pretrial motion to quash their arrests and suppress evidence. He testified that on May 31, 1978, at approximately 7:30 a.m., he responded to a call of a burglary in progress at 1917 North Pulaski. After questioning the residents at this address, it was learned that they had no knowledge of any crime. He then saw the defendants exit a basement apartment at 1925 North Pulaski. The apartment door was left open. When defendants saw Officer Vivirito, they walked away. Vivirito ordered defendants to stop, but defendants began to run. They halted only after Vivirito drew his revolver and threatened to shoot.

The officer further testified that he returned to the apartment from which defendants had exited. He conducted a protective search and examined the apartment. Gifts and packages were strewn about the room, and the apartment looked "ransacked." Vivirito suspected that the apartment was occupied by a couple he knew. When he looked into the apartment, his suspicion grew since he knew that the couple had recently received gifts at a wedding shower. Vivirito called for assistance. When other officers arrived, defendants were handcuffed and searched a second time.

The trial court denied defendants' motion to quash the arrest and suppress evidence. It found the officer's belief that defendants may have been involved in the burglary was reasonable. Defendants thereafter waived their right to a jury trial and were tried together.

Father Nicholas Carsello, pastor of Our Lady of Angels Church, testified that he was awakened at approximately 5:15 a.m. on May 31, 1978, by a noise in the study adjacent to his bedroom. As he entered the study, he saw a person leaving through another door. He encountered defendants in his bedroom. Jackson grabbed the priest's arm and placed a

hunting knife with a six-inch blade to his neck. Holmes repeatedly demanded money and threatened to strike Father Carsello with a large ash tray.

Defendants accompanied Father Carsello downstairs to Father Reardon's room. They held the knife to Father Carsello. When Father Reardon verbally responded to Father Carsello's knocks, defendants fled.

When Father Carsello entered the dining room, he saw broken glass and part of a screen in the doorway. After the police arrived, he discovered that two watches which he had left in the study the night before were missing. That evening, the police showed him photographs. Father Carsello identified the defendants. He also viewed a lineup and again identified the defendants.

Assistant State's Attorney Thomas Sullivan testified that he spoke to each defendant individually. Each was given *Miranda* warnings. Although defendants initially denied involvement in the crime, they subsequently admitted participating.

Officer Wright, an evidence technician, testified that he compared a fingerprint from an ash tray in the rectory with Holmes' fingerprints. He found them to be identical.

Mary Davis, Jackson's mother, testified that she woke her son at 4:50 a.m. on May 31, 1978, and drove Jackson and Holmes to work at 5:40 a.m. Canzdy Holmes, defendant Holmes' mother, testified that she woke her son at 5 a.m. on the morning in question. He then was driven to work by Mary Davis. Holmes and Jackson each denied being involved in the crime and making inculpatory statements to the assistant State's Attorney.

Following the denial of defendants' motion for a new trial, an agreement was made regarding the pending charge of burglary based on the occurrence at the scene of their arrest. The State withdrew its request for consecutive sentences in exchange for guilty pleas. The court was to consider the guilty pleas only in aggravation of the total sentences.

First defendants argue that the trial court erred in denying their motion to quash the arrests and suppress evidence obtained as a result of the arrests. Defendants contend that the arrests occurred when Vivirito ordered them to stop and that at this time, there was no probable cause to arrest.

■■ We disagree with defendants' characterization of Vivirito's actions at the time of the stop as an arrest. The elements of an arrest are: (1) the authority to arrest; (2) the assertion of that authority with the intent to arrest; and (3) the restraint of the person arrested. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577.) The evidence presented does not indicate that Vivirito intended to arrest defendants. The officer returned to the apartment to investigate further. He conducted only a protective search and did not tell defendants that they were under arrest.

The order to stop was not, under these circumstances, an indication of an intent to arrest. (See *People v. Clay* (1971), 133 Ill. App. 2d 344, 273 N.E.2d 254.) A showing of actual or threatened force or coercion indicates only an intent to restrain. (*People v. Kennedy* (1978), 66 Ill. App. 3d 267, 383 N.E.2d 713.) Restraint is involved in a stop (*People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285; *People v. Kennedy*) as well as in an arrest.

Rather, we believe that Vivirito intended to stop defendants for investigatory purposes. A person may be stopped in a public place when an officer reasonably infers from the circumstances that a person is committing, is about to commit, or has committed an offense. (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *People v. Basiak* (1977), 50 Ill. App. 3d 155, 365 N.E.2d 570.) The inferences must be based on specific articulable facts which warrant the intrusion. *Terry*; *Basiak*.

Here, Vivirito responded to the burglary report immediately. Vivirito was in uniform and had arrived in a marked squad car. He saw defendants exit the apartment, leaving the door ajar. When defendants saw him, they walked in the opposite direction and fled when he ordered them to stop. Defendants' flight alone required police pursuit and provided the articulable facts necessary to justify an investigatory stop. *People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155, *cert. denied* (1979), 440 U.S. 938, 59 L. Ed. 2d 496, 99 S. Ct. 1285.

We further find that defendants' subsequent arrests were based on probable cause. The standard for determining probable cause is whether a reasonable, prudent person in possession of the officer's knowledge would believe that a crime has been committed and that the accused committed the offense. *People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238, citing *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.

Again, we note those factors justifying the stop. In addition, Vivirito, upon inspecting the apartment, found it in disarray. These facts were sufficient to establish probable cause. Because of our findings that defendants were properly stopped and arrested, we need not address the issue regarding the denial of defendants' motion to suppress their statements.

Second, defendants contend that they were not proven guilty of armed violence beyond a reasonable doubt. The armed violence charge alleged, in part, that defendants knowingly entered the building while armed with a knife. Defendants argue that possession of the knife at the time of entry was not proved and that the more plausible explanation is that they obtained the knife in the rectory. As support they cite evidence of the jagged tears in the screen, as opposed to smooth cuts, and Father Carsello's testimony that knives were kept in the rectory kitchen and dining room.

Proof beyond a reasonable doubt does not require proof beyond the possibility of a doubt. (*People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801.) The trier of fact may consider inferences drawn from the evidence and is not required to raise to the status of reasonable doubt possible theories compatible with innocence. *People v. Benedik* (1974), 56 Ill. 2d 306, 307 N.E.2d 382.

■■ Evidence presented in this case reveals that defendants held a hunting knife to Father Carsello's throat and stomach. Assistant State's Attorney Sullivan testified to the content of Jackson's statement wherein Jackson stated they discarded the knife after they fled from the rectory. Furthermore, the trier of fact had photographs of the broken screen before it. Father Carsello testified that the screen had been cut. This evidence and the reasonable inferences therefrom support the trial court's finding that defendants were armed as they entered the rectory and that they were therefore guilty of armed violence.

Third, defendants contend that their convictions and sentences for both armed violence and burglary cannot stand because both arose from the same acts and the facts supporting both offenses were identical.

Armed violence consists of committing any felony while armed with a dangerous weapon. (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2.) In this case, the armed violence charge was based on the underlying felony of burglary. Both charges arose from the same conduct and proof of armed violence necessarily included proof of each element of burglary.

■■ Where convictions arise out of the same occurrence and are based upon the same physical acts it is improper to convict on the lesser offense. (*People v. Koch* (1978), 64 Ill. App. 3d 537, 381 N.E.2d 377; *People v. Cannes* (1978), 61 Ill. App. 3d 865, 378 N.E.2d 552.) Applying this principle, the court in *People v. Welte* (1979), 77 Ill. App. 3d 663, 396 N.E.2d 315, reversed a burglary conviction where it was based upon the same acts giving rise to an armed violence conviction. We therefore reverse defendants' convictions for burglary.

For the foregoing reasons, we affirm defendants' convictions for armed violence and attempt armed robbery and reverse defendants' convictions for burglary.

Judgments affirmed in part, reversed in part.

GOLDBERG and O'CONNOR, JJ., concur.