THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY KELLER *et al.*, Defendants-Appellants.

First District (5th Division)    Nos. 79-1534, 79-1820 cons.

Opinion filed September 4, 1981.

James J. Doherty, Public Defender, of Chicago (Emily Eisner and Aaron L. Meyers, Assistant Public Defenders, of counsel), for appellant Harry Keller.

Edward M. Genson, of Chicago (Jeffrey B. Steinback, of counsel), for appellant Jonas McGhee.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Kevin W. Horan, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants were indicted for six counts of theft, three counts of possession of a stolen vehicle, and two counts of possession of motor vehicle component parts. (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(d)(1), and ch. 95½, pars. 4—103(a), 4—103(d).) Defendants filed pretrial motions to suppress evidence, the hearings of which were held simultaneously with defendants' trial by the court. Following the presentation of the State's case and argument, the motions to suppress were denied. Defendants' motions for directed findings were also denied and defendants rested without presenting evidence. The court found both defendants guilty of all counts and sentenced each defendant to an extended term of 10 years for each theft count and 6 years for possession of stolen vehicles and stolen vehicle components, the sentences to run concurrently.

On appeal, defendants contend: (1) the trial court erred in denying their motions to suppress evidence; (2) they were not proved guilty beyond a reasonable doubt; (3) they were denied fair trials by the conduct of the trial court; and (4) they were improperly sentenced to extended terms.

The evidence presented by the State established the following. On May 4, 1978, at approximately noon, Chicago Police Officers Walls and Pubins were driving in an unmarked squad car near 58th and Ada in Chicago when they saw three men walking from an open commercial garage building at 5821 South Ada. The garage had previously been under police surveillance, and Officer Walls was aware that the owner or lessee had vacated the garage about a month earlier. The three men exited the garage and were standing on the sidewalk. One of the men, known to Officer Walls as Robert Wilson, yelled "police," and the three ran into the garage. Defendants were identified at trial as the other two men.

The officers drove their squad to the garage door, which was 8 to 10 feet open, and saw the three men run to the rear of the garage. Officer Pubins stood at the front door of the garage and could see a van, a truck, and three cars and motors on the floor of the garage. One of the cars was an Oldsmobile and had its door open and its seats were missing. Another car did not have a front bumper nor its front quarter panels. Officer Pubins saw the three men exit the rear of the garage. Meanwhile, Officer Walls had run through a vacant lot to the rear of the building and saw the rear doors to the garage swing open and the three men run from the garage. Officer Walls grabbed Keller, but McGhee and Wilson jumped a fence and ran toward the front of the garage. As he ran, Wilson dropped a set of keys, one of which fit the front door lock. The garage keys were recovered by Walls. Officer Walls yelled to Pubins that the two men were coming. Pubins saw the two near the front of the garage and ordered them to stop and put their hands on the exterior wall of the building located next door.

Officer Walls arrived at the front of the garage with Keller, saw the others, and ordered Keller to also place his hands on the wall. In response to Officer Walls' inquiry as to what he was doing in the garage, Keller asked "what garage?" When Officer Walls stated the garage that Keller had run out of, Keller said that he was never in a garage. Other officers arrived and Walls went to the garage to see if any other persons were inside.

From the back door of the garage, Officer Walls could see an Oldsmobile and engines and transmissions in the garage. He entered the garage and saw several late model cars in various stages of dismantlement. He also smelled burnt transmission fluid. Three vehicles which were not totally dismantled were checked by their serial numbers and found to be stolen. They were a 1978 Cougar, a 1976 Pontiac, and a 1978 Oldsmobile. Seven transmissions were found with their identification numbers burned off. Tools and cutting torches were found throughout the garage. The van and a truck in the garage, however, were not stolen. Neither were any of the defendants' fingerprints found in the garage. After Officer Walls saw the defaced motor numbers, defendants were placed under arrest. The odor of burnt transmission fluid was detected on defendants after their arrests.

Stipulations were entered which established that the three cars found in the garage had been stolen and that the owners did not give consent to any of the three men to possess their cars. Stipulations were also entered which established that the two motor transmissions found in the garage were from two cars which had been recently stolen and which none of the three men had a right to possess.

After the State's presentation of evidence, defendants rested without presenting evidence in their own behalf. Following argument, defend-

ants' motions to suppress evidence were denied. The court found defendants guilty as charged and imposed sentences. Defendants appeal.

OPINION

I

Defendants first contend that the trial court erred in denying their motion to suppress evidence. They argue that the entry and search of the garage were without probable cause, and no exigent circumstances existed to justify dispensing with the warrant requirement. The State maintains that defendants lack standing to challenge the admissibility of the stolen vehicles and vehicle parts since they failed to establish a legitimate expectation of privacy. Alternatively, the State submits that even if defendants have standing, the officers properly stopped the fleeing defendants and acted reasonably in investigating the immediate area for the purpose of insuring the officers' safety and discovering possible criminal behavior.

The standard for appellate review of a motion to suppress is whether the trial court's ruling was manifestly erroneous. (*People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.) At trial, defendants sought to suppress evidence of the stolen vehicles and vehicle parts on the ground that Officer Walls entered and searched the garage without probable cause and without a warrant. Their motion was denied on the ground that the garage was a commercial building and that therefore no fourth amendment violation occurred. The court further found that the officers properly pursued the fleeing defendants through the garage and that it does not take much to recognize a car half-dismantled. The court continued that after defendants were detained that "the officers, any officer worth his salt because of exigent circumstances existing, they go into the building. There is probable cause. They have to go inside * * * and explore at that time and determine what is contained in the garage * * *."

The State concedes that the court "may have inartfully rendered [its] finding on the ground of exigent circumstances," but nevertheless maintains that the motion to suppress was properly denied. Furthermore, the State on appeal does not contend that a search of a garage does not come under the purview of the fourth amendment. In any event such a contention would be untenable. Since the fourth amendment protects people, not places, what a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. Accordingly, the protection afforded by the fourth amendment has been applied to homes, business offices, and stores as well as public telephone booths. (See *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct.

507; *United States v. Rosenberg* (7th Cir. 1969), 416 F.2d 680.) With regard to the court's finding that the officers pursued defendants into the garage, the evidence adduced at trial plainly establishes that neither officer entered the garage until after defendants were stopped and detained outside the garage.

It is well settled that a police officer, in appropriate circumstances and in an appropriate manner, may approach and stop an individual for a reasonable period of time in order to investigate possible criminal behavior, provided that the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences from those facts, reasonably warrant an investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20-21, 20 L. Ed. 2d 889, 905-06, 88 S. Ct. 1868, 1879-80; *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209; Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) In determining whether a stop is reasonable, an objective standard is used, namely, whether the facts available to the police officers warrant a man of reasonable caution to believe that the action taken was appropriate. (*Terry v. Ohio*; *People v. Grice*.) However, a mere suspicion or hunch is not sufficient. (*People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976.) Numerous decisions have held that flight in the face of approaching officers provides the specific and articulate facts necessary to justify an investigatory stop. *E.g., People v. Jackson* (1981), 96 Ill. App. 3d 1057, 422 N.E.2d 195; *People v. Beacham* (1980), 87 Ill. App. 3d 457, 410 N.E.2d 87; *People v. Montgomery* (1977), 53 Ill. App. 3d 298, 368 N.E.2d 752.

In the instant case, Officers Walls and Pubins observed three men exit from the garage which Walls had understood to be vacant. After exiting, the three men stood on the sidewalk when one of them, Robert Wallace, yelled "police" and the three ran into the garage. Defendants' flight, coupled with Walls' understanding that the garage had been vacated a month earlier, amply supported the inference that criminal activity was afoot and justified the officers' initial detention of defendants for questioning. Compare *People v. Beacham*.

After stopping defendants, Walls questioned Keller as to what he was doing in the garage. Keller asked "what garage" and, upon further inquiry, stated that he was never in the garage. While arguably defendants' flight, when considered in conjunction with Keller's vague and unresponsive answers, may have established probable cause for defendants' arrest (compare *People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155; *People v. Cribbs* (1972), 8 Ill. App. 3d 750, 291 N.E.2d 326; *People v. Beall* (1976), 42 Ill. App. 3d 452, 355 N.E.2d 756), Walls' testimony unequivocally establishes that defendants were not arrested until after he saw the defaced motor numbers.

Under the fourth amendment all warrantless searches and seizures

are unreasonable except those conducted within a few narrowly defined situations where the circumstances justifying the search outweigh the privacy right. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022; *Katz v. United States* (1967), 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507.) Accordingly, warrantless searches have been justified if they are incident to a lawful arrest (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034); when it is conducted with probable cause under exigent circumstances (*Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826); when it involves a vehicle (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975); or when it is made for administrative purposes to satisfy a special governmental need and necessity outweighs the invasion entailed. (*Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727; see also *United States v. Richards* (5th Cir. 1981), 638 F.2d 765, 770.) However, it is not constitutionally permissible for the police, absent an emergency, to arrest an individual outside his home and then proceed to conduct a search inside. *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969; *Shipley v. California* (1969), 395 U.S. 818, 23 L. Ed. 2d 732, 89 S. Ct. 2053.

■■ Relying on *Rakas v. Illinois* (1978), 439 U.S. 128, 59 L. Ed. 2d 83, 99 S. Ct. 1035, the State initially argues that defendants have no standing to assert a violation of their fourth amendment rights since they failed to show a legitimate expectation of privacy in the garage. The State, however, failed to raise this issue in the trial court at the suppression hearing and has therefore waived this right to challenge the standing of defendants. (*People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871; *People v. Brown* (1980), 88 Ill. App. 3d 514, 410 N.E.2d 505; *People v. Zeller* (1977), 51 Ill. App. 3d 935, 367 N.E.2d 488.) Since we hold that the State has waived the issue of standing, we do not reach the applicability of *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, decided subsequent to the trial court's ruling herein and which overruled the automatic standing rule of *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.

■■ The State next argues that Officer Walls' observation prior to entering the garage amounted to plain view and that therefore it was proper for the officers to enter the garage, seize the items and make further observations. The State's argument is premised on Walls' testimony that after Kellér stated that he was never in the garage, Walls went to the rear of the garage to see if anyone else was in the building. From there he could see an engine and transmissions in the back, an Oldsmobile and two trucks. The major flaw in this argument is that plain view, standing alone, is never enough to justify a warrantless seizure. (*People v. Rinaldo* (1980),

80 Ill. App. 3d 433, 399 N.E.2d 1027; *People v. Pakula* (1980), 89 Ill. App. 3d 789, 411 N.E.2d 1385; *People v. Eastin* (1972), 8 Ill. App. 3d 512, 289 N.E.2d 673.) Plain view is not an exception to the warrant requirement but rather is intended to serve only as a means of satisfying the requirement of probable cause. (*People v. Pakula.*) Consequently, without the simultaneous existence of one of the true exceptions which justify dispensing with the warrant requirement, the warrantless search of evidence in plain view is impermissible. See *People v. Pakula*; *People v. Rinaldo*.

■■ Furthermore, the mere presence of automobiles and automobile parts in a garage does not give rise to probable cause that they were stolen. These items are common place in auto-body repair shops and automotive service centers. Considering Officer Walls' testimony that he did not arrest defendants until after he observed motors with their identification numbers burnt off, smelled the odor of burnt transmission fluid and found a black bag, cutting torches and other tools (all of which he discovered after he entered the garage), and it is apparent that Walls did not consider his initial "observation" sufficient probable cause to arrest defendants. These additional discoveries do not even remotely fall within the doctrine of plain view since they were the result of a thorough search and were not an inadvertent finding.

■■ Nor can the warrantless search be justified on the basis of exigent circumstances. While warrantless entries into private premises are permissible when there is a compelling need for official action and no time to secure a warrant (*People v. Annerino* (1981), 97 Ill. App. 3d 240, 422 N.E.2d 923; *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098), no such emergency existed in the instant case. The State's argument that an immediate search was necessary to insure their safety is without merit. Defendants were unarmed and already in custody. The officers initially had seen only three individuals exit the garage and then flee back into it. The officers successfully stopped and detained these same three individuals. The fact that the officers were outside the building undercuts any claim that they feared for their personal safety. Additionally, while Walls testified that when he first looked into the garage he was able to see numerous cars and parts, there is not the slightest suggestion that he detected the presence of an accomplice hiding in the garage. At the point Walls initially peered into the garage, there is no indication that he suspected that the parts were stolen. In any event, absent a clear and present danger that pertinent evidence would be destroyed, the possibility that a confederate was still at large does not justify a warrantless entry. (*People v. Vogel* (1978), 58 Ill. App. 3d 910, 374 N.E.2d 1152.) Furthermore, the police should not be able to create their own exigent

circumstances by arresting an individual outside and then assert the possibility that a third person may destroy evidence to justify a search of the premises. See *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969.

It is also significant to note that the evidence seized in the instant case was of a very durable nature. The arrival of additional officers also minimized the possibility that the automobiles and parts would be destroyed or removed. Any danger of destruction could have been readily thwarted by stationing these additional officers at the building's three entrances until a search warrant was obtained. In light of the ability of the police to eliminate the risk that any evidence would be destroyed or removed, there were no exigent circumstances to justify the warrantless entry.

■■ Finally, the search in the present case cannot be justified on the basis it was incident to a lawful arrest for several reasons. First, it is undisputed that defendants were not arrested until after the search of the garage enabled Walls to discover that the motor numbers had been burnt off. It is axiomatic that an incident search may not precede an arrest and serve as part of its justification. *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889; *People v. Grogan* (1978), 63.Ill. App. 3d 711, 380 N.E.2d 485.

■■ Second, defendants were stopped and detained outside the garage. Even assuming that this initial stop amounted to an arrest, which it did not, the officers would not be justified in subsequently searching the garage. Once an individual is under arrest and is in custody, a search made at another place is simply not incident to the arrest. (*People v. Eastin* (1972), 8 Ill. App. 3d 512, 289 N.E.2d 673; see also *Preston v. United States* (1964), 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881.) Third, under *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, a search incident to an arrest may not extend beyond the arrestee's person and the area within his immediate control and from which he might gain possession of a weapon or something that could be used as evidence against him. (See also *People v. Jackson* (1978), 57 Ill. App. 3d 720, 373 N.E.2d 729.) Since defendants were stopped and detained outside the garage, the State cannot reasonably contend that the garage was still within defendants' immediate control.

Accordingly, we find that the trial court erred in failing to grant defendants' motion to suppress the evidence.

## II

In view of our determination that evidence of the stolen vehicles and vehicle parts should have been suppressed, there is no evidence upon

which to sustain defendants' conviction. Accordingly, we find it unnecessary to consider defendants' further contentions.

For the reasons stated, we reverse defendants' convictions.

Reversed.

LORENZ and WILSON, JJ., concur.