(No. 46170.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANDY H. LOCKEN, Appellant.

*Opinion filed Nov. 27, 1974.—Rehearing denied Jan. 28, 1975.*

Le Roy E. Stevens, of Chicago (Louis I. Gordon, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, of Chicago, and Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

The defendant, Andy H. Locken, was charged with the offenses of battery, aggravated assault and resisting a peace officer in violation of the provisions of sections 12—3 and 31—1 of the Criminal Code. (Ill. Rev. Stat. 1971, ch. 38, pars. 12—3 and 31—1.) He was found guilty in a bench trial in the circuit court of Cook County on the resisting charge and not guilty on the charge of battery. A fine of $200 with $50 costs was imposed and defendant was sentenced to probation for one year. On appeal, the State confessed error, and the Appellate Court for the First District reversed the judgment and remanded the cause for a new trial. We granted defendant's petition for leave to appeal in which he seeks to vacate the remandment.

Andy Locken, then age 20, and his mother, Mrs. Erma Anderson, gave a party in honor of the Harper College wrestling team, of which Andy was a member, at their home at 907 Sigwalt Street, Arlington Heights. When one of the detectives, who was with the other peace officers, asked to be let into the house, the defendant, Andy Locken, asked if he had a warrant, and the officer replied, "We don't need any." The officer then tried to force his way into the Anderson/Locken home without a warrant and Andy Locken resisted his entrance. A scuffle ensued, and, after being sprayed with mace, Andy was subdued, handcuffed and placed under arrest. When Mrs. Anderson

later called at the police station to inquire about her son, she was booked and placed under arrest.

The aggravated-assault charged against Andy Locken was withdrawn by the prosecution prior to trial, and the battery charge against him was disposed of in his favor, and Mrs. Anderson was acquitted on all charges.

The defendant appealed from the conviction in the trial court. In lieu of filing a brief in opposition to the defendant's arguments in support of his appeal, the People filed a confession of error in the appellate court, wherein it was averred: "4. That the peace officer entered the defendant's home without a search warrant or probable cause that an offense was being committed. 5. That even if there was probable cause no exigent circumstances existed to eliminate the requirement of a search warrant. *** 7. That the evidence adduced at trial revealed that the peace officers were acting on mere suspicion that there was a violation of the law, ***" that the unlawful entry into an individual's home is not an authorized act; and that an essential element of the offense of resisting a peace officer is that the peace officer was engaged in an authorized act.

In this court the State asserts that it was mistaken in confessing error in the appellate court and in its brief requests this court "to reverse the judgment of the Appellate Court and affirm the conviction of the defendant, Andy Locken. In the alternative that this court does not wish to consider the substantive issue in this case, the People request this court to summarily modify the judgment of the Appellate Court and reverse the conviction of the defendant without remand."

The transcript consists of 220 typewritten pages and covers the testimony of 10 witnesses. Four of the officers who participated in the police action against the Locken/Anderson residence testified for the prosecution.

In the early evening of March 25, 1972, the police picked up a 17-year-old youth named Samuel Rickadaugh in an intoxicated condition. The police testified that

Rickadaugh told them that he had obtained his liquor at the defendant's house, which was located approximately one block from where Rickadaugh was found by the police. The officers stated that Rickadaugh gave them the specific address of defendant's home, although at trial Rickadaugh testified that he had given the police a different address. At trial he did admit that he had been at defendant's house earlier on the evening of the occurrence, but testified he was not admitted. Based on the information the police received from Rickadaugh, they began a surveillance of the defendant's home. Two officers watched the home for about 10 minutes and observed 5 or 6 people, whom the officers believed to be under the age of 21, enter the house. One of these individuals, who appeared to be underage, was seen carrying a carton of beer into the home.

On this basis the police determined there was probable cause to believe the State liquor laws had been and were being violated and that they were authorized to enter defendant's house to stop the violations. They did not seek a warrant. Four officers, at least one of whom was known to defendant, including Officers Martinson and VanRaalte went to the front door of the home. At least two of the officers were in uniform. Defendant answered their knock and while they spoke to him, defendant's mother, Mrs. Anderson, came to the door. Officer Martinson informed her of the pick-up of the 17-year-old intoxicated youth in the vicinity and that he indicated he had been drinking in her home. He also informed her that underage youths, one of whom was in possession of beer, had been seen entering her home and that the officers therefore had probable cause to believe offenses had been committed. Mrs. Anderson protested, denied that the 17-year-old boy had become intoxicated at her home, stated that the party going on was for her son and his friends, most of whom were college age and older, and that she was supervising the party. The officers explained why they felt it necessary

to enter the house, and that under the circumstances a search warrant was not required.

While the testimony is contradictory, it is clear that defendant either punched or shoved the .officer to prevent his attempted entry into the house. The ensuing struggle took place on the front porch during which Officer Martinson grabbed the defendant around the waist, told him he was under arrest, and two other officers aided him in subduing defendant. Officer VanRaalte then apparently grasped Mrs. Anderson by the shoulders and moved her to one side because she had interposed herself between him and the defendant. Defendant broke free from the officers and struck or shoved Officer VanRaalte again. The testimony is in conflict as to whether the officer was knocked to the ground. Several officers once again subdued defendant despite his vigorous struggle. Officer Martinson testified that he told defendant he was under arrest when he first tried to subdue him. Another officer testified he told defendant he was under arrest when he saw defendant strike Officer VanRaalte the second time, and that defendant then cursed him. Both officers testified that defendant continued to struggle after being told he was under arrest. Defendant maintained he did not hear anyone state he was under arrest until he was taken to the police station. Defendant admitted that he struggled with the officers but only to break away from them, protect his mother and thwart the officers' attempts to unlawfully enter his family dwelling. It is undisputed that defendant did offer physical resistance to the police officers, knowing they were police officers. The record is clear that the trial court found defendant guilty of resisting a police officer because the defendant physically resisted Officer Martinson after being told he was under arrest.

The procedural circumstances here are unusual. The judgment finding defendant guilty was reversed by the appellate court indicating at least a partial acceptance of the State's confession of error in which it was stated that

the police officers were not engaged in an authorized act when they attempted to enter defendant's home and he then resisted them. The State's confession of error included a request that the conviction be reversed. The appellate court did not write an opinion herein, rather it entered an order which recited that the appellee moved that the judgment be reversed and the cause remanded for a new trial; and the court ordered "that the judgment of the Circuit Court is reversed and the case is remanded for a new trial."

Section 31—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 31—1), under which Andy Locken was charged, provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both."

As indicated by the Committee Comments upon section 31—1, a complete understanding of section 31—1 can be reached only by reading it in conjunction with section 7—7:

> "*** Note that the offense covers only resistance or obstruction to 'authorized' acts of the officer. *However, if the act resisted or obstructed is the making of an arrest, a private person is not authorized to resist such arrest with force even though he knows the arrest is unlawful* (sec. 7—7)." (Emphasis added.) S.H.A., ch. 38, sec. 31—1, Committee Comments, at 735 (1970).

Section 7—7 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 7—7) provides:

> "(a) A person is not authorized to use force to resist an arrest which he knows is being made either by a police officer or by a private person summoned and directed by a peace officer to make the arrest, even if he believes that the arrest is unlawful and the arrest in fact is unlawful."

It appears that the legislature, by adopting section 7—7, intended that the making of an unlawful arrest is to be

considered an "authorized act" for purposes of section 31—1. Consequently, resistance of even an unlawful arrest by a known officer is a violation of section 31—1.

Accordingly, the order of the appellate court which reversed the judgment of the circuit court and remanded the cause for a new trial is vacated; and the judgment of the circuit court is affirmed.

*Appellate court order vacated;*
*circuit court affirmed.*