THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. TIMOTHY A. BESSER, Defendant-Appellee.

Fourth District   No. 4—94—0825

Argued April 12, 1995.—Opinion filed June 30, 1995.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Peter J. Vilkelis (argued), of Chicago, for appellee.

JUSTICE COOK delivered the opinion of the court:

Defendant, Timothy A. Besser, was charged with unlawful possession with intent to deliver more than 500 grams of a substance containing cannabis. (720 ILCS 550/5(e) (West 1992).) The trial court granted defendant's motion to suppress all physical evidence and statements discovered as a result of an illegal search and the fruits thereof. The State appeals. We affirm.

During the hearing on the motion to suppress, defendant called John Buczkiewicz. Buczkiewicz testified he was a police officer employed by the University of Illinois, and on April 1, 1994, he was assigned to the Illinois State Police Drug Task Force. In that capacity, he and Officers Connolly and Voges were present when Greyhound bus No. 2377 stopped at the Urbana station at approximately 2:50 a.m. Buczkiewicz believed the bus had been scheduled to arrive at 2:40 a.m. The officers' normal routine was to be present for all scheduled arrivals at the Urbana station. The officers had no specific information about this particular bus or any passengers on it.

The bus was filled with 47 to 50 passengers. The officers observed the bus for a moment to see whether any passengers would disembark. A few did, but none were bound for Champaign or Urbana. Buczkiewicz and Voges then entered the bus and Voges walked to the rear. The officers followed their normal routine, which included identifying themselves, speaking with each person individually, and asking the passengers to identify their luggage. Voges asked the passengers to identify their luggage, which was normally stored either overhead or at their feet, while Buczkiewicz remained behind to make sure the aisle was clear, to observe the passengers' reactions, and to ensure nobody tried to harm Voges or take any unclaimed luggage off the bus. The questioning of the passengers took 15 to 20 minutes. Buczkiewicz did not indicate whether the bus was held past its normal departure time.

Defendant was a passenger on bus No. 2377 and had been sitting in front on the driver's side. He disembarked with a few other passengers to smoke when the officers first entered the bus and returned to his seat three to five minutes later. When Voges questioned defendant, defendant denied having any carry-on luggage. Buczkiewicz, however, observed a black bag on the rack above defendant's seat. Voges continued questioning the other passengers, while Buczkiewicz remained behind to see if anybody claimed the bag. Meanwhile, Connolly used a narcotic detection dog to "screen" the luggage in the compartment beneath the bus.

Voges questioned all the passengers but nobody claimed the black bag. Buczkiewicz took the bag, walked through the entire bus, and asked each passenger if it belonged to him or her. Each passenger, including defendant, denied ownership. Buczkiewicz asked the bus driver if the bag could belong to someone other than a passenger. The driver said no, that luggage of that nature was always stored underneath the bus and had a claim ticket to identify it. Buczkiewicz concluded the bag belonged to a passenger and turned it over to Connolly.

Approximately five minutes later, Connolly told Buczkiewicz that he had opened the bag to determine the owner's identity and had found marijuana. Connolly sent Voges back into the bus to question the two passengers who were seated directly beneath the bag, defendant and a passenger named Hampton. Voges questioned them and released Hampton. Defendant admitted it was his bag, and he was arrested about 3:25 a.m. The police had no search warrant for the bag or arrest warrant for defendant. The State did not cross-examine Buczkiewicz and both sides rested without further presentation of evidence.

■ On a motion to suppress, defendant bears the burden of proving that the search and seizure were illegal. (725 ILCS 5/114—12(b)(West 1992).) The trial court's ruling on a motion to suppress is entitled to great deference and will not be overturned unless against the manifest weight of the evidence. (*People v. Murray* (1990), 137 Ill. 2d 382, 387, 560 N.E.2d 309, 311; *People v. Smith* (1994), 266 Ill. App. 3d 362, 364, 640 N.E.2d 647, 648.) Where the testimony is uncontested and the credibility of the witnesses is not questioned, a question of law is presented and a reviewing court may consider the question *de novo*. (*People v. Ravellette* (1994), 263 Ill. App. 3d 906, 911, 636 N.E.2d 105, 109; *People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783; *In re D.G.* (1991), 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649.) Nevertheless, where more than one inference may be drawn from the facts, even uncontested facts, the question remains one for the trier of fact. (See *Walter v. Carriage House Hotels, Ltd.* (1995), 164 Ill. 2d 80, 86, 646 N.E.2d 599, 602 (issue "a question of fact for the jury if the facts are disputed or capable of more than one inference"); *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272, 586 N.E.2d 1211, 1215 (where divergent inferences could be drawn from undisputed facts, issue should be decided by trier of fact).) Although only one witness testified in this case, the question whether a reasonable person would have felt free to decline the officers' requests required the trial court to draw an inference from that testimony.

■ Not all police-citizen encounters constitute fourth amendment "seizures" which must be justified by showing some form of grounds for the detention. A person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*People v. Murray* (1990), 137 Ill. 2d 382, 389, 560 N.E.2d 309, 312, quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.) In *Mendenhall*, Federal drug agents approached respondent as she walked through an airport concourse. "The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions." *Mendenhall*, 446 U.S. at 555, 64 L. Ed. 2d at 510, 100 S. Ct. at 1877.

In *Florida v. Bostick* (1991), 501 U.S. 429, 115 L. Ed. 2d 389, 111 S. Ct. 2382, two police officers boarded a bus during a stopover, picked out the defendant passenger (admittedly without articulable

suspicion), and asked to see his ticket and identification. The officers then asked for defendant's consent to search his luggage, after advising him he had the right to refuse consent, and found illegal drugs. The Florida Supreme Court ruled that although such questioning may be permissible in other settings, the practice was unconstitutional in the cramped confines of a bus. The United States Supreme Court rejected the application of a *per se* rule to bus cases, and remanded for the Florida Supreme Court to consider the totality of the circumstances, noting, however, that "[t]he cramped confines of a bus are one relevant factor that should be considered in evaluating whether a passenger's consent is voluntary." (*Bostick*, 501 U.S. at 439, 115 L. Ed. 2d at 401, 111 S. Ct. at 2389.) *Bostick* further held that in bus cases the question was not whether defendant felt free to leave the bus (he was on a trip and would not have felt free to leave even if the police had not been present), but whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Bostick*, 501 U.S. at 439-40, 115 L. Ed. 2d at 401-02, 111 S. Ct. at 2389.

The Court recognized in *Bostick* that " '[c]onsent' that is the product of official intimidation or harassment is not consent at all." (*Bostick*, 501 U.S. at 438, 115 L. Ed. 2d at 401, 111 S. Ct. at 2388.) Would a " 'reasonable person,' " a reasonable "*innocent*" person (emphasis in original) (*Bostick*, 501 U.S. at 437-38, 115 L. Ed. 2d at 400, 111 S. Ct. at 2388), have felt free to decline the officers' requests here, or otherwise terminate the encounter? This was not a brief encounter where officers simply approach an individual and ask a few questions. In *Bostick*, the officers selected only one passenger; in this case they questioned all the passengers, and that inquiry took 15 to 20 minutes. After no one admitted ownership of the black bag, further questioning was directed to defendant and to Hampton, who was seated near him on the bus. The officers did not advise the bus passengers here that the passengers were free to ignore their questions. The officers used a narcotic detection dog to search some areas of the bus. Buczkiewicz testified he would stop anyone who tried to take any unclaimed luggage off the bus. *Bostick* did not involve the type of questioning involved here, where an individual is asked whether a certain item is his, knowing that the police will treat it as abandoned if he says "no." (See *People v. Morrison* (1988), 178 Ill. App. 3d 76, 82, 532 N.E.2d 1077, 1081 ("defendant faced the apparent conflict of those charged with possession offenses").) Of course, the trial court could consider that this search occurred at 2:50 a.m., and that it occurred in the cramped confines of a bus. Under all these circum-

stances the trial court could appropriately have concluded that a reasonable person would not have felt free to have declined the officers' requests without facing further interrogation and delay.

It may be questioned whether the trial court made any finding how a reasonable person would have felt. In making its ruling, the trial court stated only:

> "It seems to me that this type of shot-in-the-dark search—and that's what was going on obviously—of the entire bus and simply taking a bag that nobody has claimed and opening it, somehow that kind of random police work is a little offensive to me."

Nevertheless, *Bostick* had been argued to the trial court, and there was no request that the trial court further explain its ruling. A reviewing court will extend all reasonable presumptions in favor of the judgment or order from which an appeal is taken, and will not presume that error occurred below. *Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345-46, 459 N.E.2d 651, 654; see also *People v. Gallinger* (1993), 252 Ill. App. 3d 816, 819-20, 624 N.E.2d 399, 402.

■ It is possible in these cases that an encounter which does not at first constitute a seizure may become one at some point, after further developments have taken place or additional time has elapsed. Evidence resulting from police questioning before a seizure has occurred may be admissible even if similar evidence acquired following a seizure would not. In this case, the trial court could have found that a seizure occurred before defendant first denied he had any carry-on luggage. Buczkiewicz and Voges had been on the bus for three to five minutes by that time, and the dog had begun to check luggage in the compartment beneath the bus. Certainly the trial court could have concluded that a seizure had occurred by the time Buczkiewicz turned the bag over to Connolly after taking it, walking through the bus, and asking each passenger if it belonged to him or her. We conclude the trial court could properly determine that defendant was seized, that his answers to questions after that seizure were not voluntary, that any right on the part of the officers to seize the bag was dependent on defendant's answers denying ownership of the bag, that the search and seizure of the bag were in violation of defendant's rights under the fourth amendment, and any admissions made by the defendant were the fruits of that search and seizure.

Because we affirm on the seizure issue, it is not necessary for us to consider the trial court's alternate ruling that a simple denial of ownership is not an abandonment.

Affirmed.

LUND and GREEN, JJ., concur.