THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUSTIN JON SINCLAIR, Defendant-Appellant.

Third District    No. 3—95—0173

Opinion filed June 4, 1996.

Tracy McGonigle (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

David W. Neal, State's Attorney, of Morris (John X. Breslin and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant Austin Jon Sinclair was indicted for the offense of unlawful possession of cannabis, in violation of section 4(d) of the Cannabis Control Act. 720 ILCS 550/4(d) (West 1994). Defendant filed a motion to quash arrest and suppress evidence, asserting that he was illegally detained and searched. The trial judge denied the motion. Following a stipulated bench trial, defendant was found guilty and sentenced to 30 months' probation. Defendant appeals the decision of the trial court denying the motion to quash and suppress. We reverse and remand for further proceedings.

## I. FACTS

Defendant was a passenger in a four-door car that was stopped for speeding on the night of May 3, 1994, by Officer Dite of the Morris police department. At the hearing on defendant's motion to quash and suppress, Dite testified that the car was traveling 55 miles per hour in a 45-mile-per-hour zone. The stop was videotaped by a camera in Dite's car.

After stopping the car, Officer Dite approached the vehicle and requested the driver's license and insurance card. The driver complied, and Dite began to ask the driver questions about speeding. Dite requested that the driver step from the car and opened the door. The driver complied. Dite inquired about where the driver had been. Dite then stated, "I'll just give you a warning tonight."

During this exchange, two more officers approached the car. Dite instructed one of the officers to obtain identification from the passengers.

Officer Dite asked the driver whether there was anything illegal in the car, such as weapons or drugs. The driver said no. Dite then inquired whether the driver knew anyone who used drugs. The driver responded that some kids at school used drugs.

Following Officer Dite's instructions to obtain identification from the passengers, a second policeman knocked on the window of the car and gestured for the front-seat passenger to roll down the window. The policeman shined a light in that passenger's window. The policeman then opened the passenger-side back door, leaned in and shined his flashlight. The passengers then complied with the request that they turn over their identifications.

Officer Dite asked the driver for permission to search for weapons. The driver refused, explaining that he had received this advice from his lawyer. Dite asked for the lawyer's phone number.

Dite then told the driver that his request to search had never been refused. Again the driver stated that his lawyer had told him to

say no. Dite then asked the driver his age, and the driver said that he was 16. Dite responded, "You can kinda make decisions for yourself." Dite again asked for consent to search, and proceeded to convince the driver that there were advantages to permitting a search. Finally, $2^1/_2$ minutes after Officer Dite warned the driver not to speed, the driver consented to a search.

One passenger was then asked to exit the vehicle, while two others were instructed to stay in the car. The passenger who exited was told to step away from the car and was subsequently questioned by one of the other officers. In the meantime, Dite sought and obtained permission to pat down the driver.

After the driver signed the written consent form, he was told to stand in front of his car with his hands on the hood of the car. The passengers were told to exit and go with Officer Steffes. Steffes showed the passengers and driver where to stand, touching the driver's arm as he did so. The driver and passengers complied and stood in a line. Officer Steffes stood between them and the car.

Dite and other officers proceeded to search the car. While Dite claimed that he smelled the odor of cannabis, the officers found no weapons or drugs.

During the search, Steffes instructed the driver and passengers to remove their hands from their pockets. He also told them to pull their pockets inside-out, which Steffes referred to as "rabbit ears," so that he could see what they had inside.

Steffes then had the defendant pull his pants tight against his body, and Steffes observed a bulge. Officers Steffes and Dite talked. Dite then approached the defendant, asked for permission to search him, obtained permission, and patted down the defendant. Dite felt something and reached inside the defendant's waistband. Twenty-five minutes after stopping the car for speeding, Officer Dite found cannabis and placed the defendant under arrest.

## II. ANALYSIS

■ Generally, a circuit court's ruling on a motion to suppress evidence is subject to reversal only if manifestly erroneous. *People v. James*, 163 Ill. 2d 302, 310, 645 N.E.2d 195, 199 (1994). Here, we conclude that the trial court's ruling was manifestly erroneous.

The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) extends these constitutional guarantees to searches and seizures conducted by state

officials. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314 (1996), citing *Elkins v. United States*, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960).

■ A "seizure" occurs when an officer has restrained a person's freedom of movement by physical force or show of authority (*Michigan v. Chesternut*, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 571, 108 S. Ct. 1975, 1979 (1988)) or when a reasonable person would believe that he or she is not free to leave (*Florida v. Bostick*, 501 U.S. 429, 439, 115 L. Ed. 2d 389, 401, 111 S. Ct. 2382, 2389 (1991)). Requesting a driver's license and telling a person to stay in the car constitutes a seizure. *People v. McVey*, 185 Ill. App. 3d 536, 541 N.E.2d 835 (1989). Once the reason for the initial stop no longer exists, an order to wait while a driver's license is checked also constitutes a seizure. *People v. Arteaga*, 274 Ill. App. 3d 781, 655 N.E.2d 290 (1995).

In *State v. Robinette*, 73 Ohio St. 3d 650, 653 N.E.2d 695 (1995), the Supreme Court of Ohio reviewed a case where a driver was stopped for speeding. Although the officer had decided to issue only a verbal warning, he asked the driver for his license and requested that the driver exit the vehicle. After checking the validity of the license, the officer returned it to the driver. The officer then inquired:

> "One question before you get gone: are you carrying any illegal contraband in your car?" *Robinette*, 73 Ohio St. 3d at 654, 653 N.E.2d at 698.

When the driver responded in the negative, the officer sought and obtained consent to search the vehicle. The search yielded contraband that served as the basis for arresting the driver.

The court in *Robinette* held that when the reason for a continued detention is unrelated to the purpose of the original traffic stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention, that continued detention constitutes an illegal seizure. *Robinette*, 73 Ohio St. 3d at 653, 653 N.E.2d at 697-98. The *Robinette* court added that the need existed for a "bright line" between the conclusion of a valid seizure and the beginning of a consensual exchange. Accordingly, the court announced that any attempt at consensual exchange must be preceded by the phrase, "At this time you are legally free to go," or other words of similar import. *Robinette*, 73 Ohio St. 3d at 655, 653 N.E.2d at 699.

Attempts to transform routine traffic stops into prolonged, consensual searches often lead to confusion over whether and when persons are actually free to leave. In deciding this case, however, we need not adopt the *Robinette* "bright line" mandatory-admonishment requirement.

■ The constitution does not proscribe all state-initiated searches and seizures. *Florida v. Jimeno*, 500 U.S. 248, 250, 114 L. Ed. 2d 297, 302, 111 S. Ct. 1801, 1803 (1991). The constitution forbids only unreasonable searches and seizures, and it does not proscribe voluntary cooperation. *Bostick*, 501 U.S. at 439, 115 L. Ed. 2d at 401, 111 S. Ct. at 2389.

■ Under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), a law enforcement officer is permitted to make a limited seizure of an individual suspected of criminal activity. Pursuant to *Terry*, a two-prong inquiry is necessary to determine the reasonableness of the officer's actions: (1) whether the officer's actions were justified at the inception, and (2) whether the officer's subsequent actions were reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

■ The prosecution has shown that the initial stop of the car was proper. Although some evidence indicated that the officer's motive for stopping the car was to search for drugs, other evidence established that the car was speeding at the time it was stopped. As this court stated in *People v. Alvarez*, 243 Ill. App. 3d 933, 938, 613 N.E.2d 290, 294 (1993), the issue before us is "whether the stop is objectively reasonable. If it is, then the search is not invalidated solely because the officer acted out of improper or dual motivation." Since it was undisputed that the car was speeding in this case, Officer Dite acted properly in stopping the car in which the defendant was riding.

However, the trial judge's ruling that the defendant was free to leave the scene and therefore he was not seized prior to being searched is against the manifest weight of the evidence. After the car was stopped for speeding, the passengers were required to produce identification. One passenger was told to exit the car, while two others were instructed to stay inside. After the driver was patted down and ordered to keep his hands on his head, the remaining passengers were told to exit the car and go with a police officer. That officer then directed the actions of the driver and passengers by touching one of them, telling them where to stand, and placing himself between the boys and the car. Under these circumstances, a reasonable person would believe that he or she was not free to leave; accordingly, the defendant was subjected to seizure.

The officer's actions were not reasonably related to the circumstances which justified the initial stop. As the Supreme Court stated in *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983):

"The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be \*\*\* no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."

In the name of investigating a person who is merely suspected of criminal activity, the police may not carry out a full search of the person or his automobile or his other effects. *Royer*, 460 U.S. at 499, 75 L. Ed. 2d at 237, 103 S. Ct. at 1325.

In *United States v. Lee*, 73 F.3d 1034 (10th Cir. 1996), a car was stopped for straddling the line and the driver possibly being sleepy or intoxicated. After writing a citation for improper lane change, the officer inquired whether the driver and passenger were carrying any firearms or narcotics. After the passenger-owner stated they were not, he gave permission for the officer to search the car. The driver and passenger were instructed to walk to the back of the car, where another officer could watch them. The search revealed the presence of a bag containing crack cocaine, and both the driver and passenger were arrested.

The court in *Lee* held that the officer's questions about firearms and drugs were unrelated to the underlying justification for the detention, *i.e.*, to determine if the driver was driving under the influence. After issuing the citation and determining that the driver was capable of driving, the officer should have terminated the encounter and permitted the driver and passenger to go on their way. *Lee*, 73 F.3d at 1039.

Here, after warning the driver about speeding, the only reason to detain the driver and passengers was to inquire if the driver would consent to a search of the car. When the driver said "no," the group should have been allowed to leave. The officer had no justifiable reason to extend the seizure of the passengers in an effort to change the driver's mind. As the Supreme Court indicated in *Florida v. Bostick*, 501 U.S. 429, 438, 115 L. Ed. 2d 389, 401, 111 S. Ct. 2382, 2388 (1991):

"[A] decision to cooperate with law enforcement officers authorizes the police to conduct a search without first obtaining a warrant *only* if the cooperation is voluntary. 'Consent' that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse." (Emphasis in original.) *Bostick*, 501 U.S. at 438, 115 L. Ed. 2d at 401, 111 S. Ct. at 2388.

Here, instead of honoring the driver's decision to withhold consent,

138

the officer improperly questioned the driver's decision and motives. During this time, the defendant was required to stay in the car and could not leave.

Without deciding whether officers must tell drivers and passengers whether or not they are free to go, we hold that where a person unambiguously exerts his right to withhold consent for a search, the police cannot continue to intimidate, harass or badger the person until they achieve their objective. In the absence of either probable cause or a reasonable and articulable suspicion sufficient to prolong the investigatory stop, once a driver states that he will not consent to a search, the police are obliged to release the driver, car and passengers. Failing to do so in this case, the officers improperly detained the defendant.

Because the defendant was illegally detained at the time he consented to being searched, that consent was tainted by the illegality and was ineffective to justify the search. *Royer*, 460 U.S. at 507-08, 75 L. Ed. 2d at 243, 103 S. Ct. at 1329; see also *Lee*, 73 F.3d at 1040.

### III. CONCLUSION

The judgment of the circuit court of Grundy County is reversed, and this cause is remanded for further proceedings consistent with this decision.

Reversed and remanded.

McCUSKEY and SLATER, JJ., concur.