THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. FA-RD MOORE, Defendant-Appellee.

Third District    No. 3—96—0608

Opinion filed February 7, 1997.—Rehearing denied March 19, 1997.

Michael Kick, State's Attorney, of Kankakee (John X. Breslin and J. Paul Hoffmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Tracy McGonigle (argued), of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)), the State appeals from an order of the circuit court of Kankakee County that granted a motion to suppress evidence filed by the defendant, Fa-Rd Moore. The State argues that the trial court erred when it granted the motion to suppress. Following our careful review of the record, we affirm.

## FACTS

The defendant was charged by indictment with unlawful possession of more than 1 gram but less than 15 grams of a substance containing cocaine with intent to deliver (720 ILCS 570/401(c)(2) (West 1994)). The defendant filed a motion to suppress evidence that alleged that the search of his person was in violation of his fourth amendment rights.

A hearing was held on the defendant's motion on June 28, 1996. The defendant called two witnesses, David Williams and Ruben Bautista. Williams testified that he was a police officer with the sheriff's department. On July 18, 1995, he was participating with officers from various jurisdictions in a detail to identify gang members. As part of this detail, he went to Gibbs Tavern in Hopkins Park, Pembroke Township. Williams testified that he had been at Gibbs Tavern many times because of criminal activity at that location.

Williams saw a male subject, later identified as the defendant, running in front of the tavern. He saw Officer Bautista chasing the defendant and heard Bautista say, "stop, police." Williams joined in the chase and also told the defendant to stop.

Bautista testified that he was an officer with the Illinois State Police. On July 18, 1995, he was assigned to the gang crime unit. Bautista was wearing a gang tactical outfit consisting of a State Police T-shirt with a badge on his left chest, a web gear belt with a badge and radios and a State Police ball cap. Bautista arrived at Gibbs Tavern at approximately 11:40 p.m. Bautista stated that the tavern was frequented by gang members and that many narcotic activities and shootings have occurred at that location.

Bautista saw the defendant next to a van parked in front of the tavern entrance. The defendant was talking to someone sitting inside

the van. Bautista, who was 75 to 100 feet away, then saw what appeared to be an exchange of money. Bautista testified that he was not able to tell who was giving or receiving the money or if anything else was exchanged. He admitted that, because of the distance and lack of light, he was not able to determine if the exchange he saw was part of an illegal transaction.

Bautista testified that after making his observation, he began walking toward the van. He said the defendant saw him approaching and began to walk away from the van. Bautista advised the defendant that he was a State Police officer. The defendant began to walk faster, and Bautista started to chase him. The defendant started running and turned into an alleyway. Williams joined in the chase and was able to tackle the defendant. A plastic bag of cocaine was found on the defendant as a result of a pat-down search for weapons conducted by Williams.

Following Bautista's testimony, defense counsel argued that the police did not have any indication that the defendant was involved in a crime prior to the chase. The State contended that Bautista was approaching the defendant to ask him questions and properly seized the defendant based upon his "attempt to elude the police in violation of our statute prohibiting [resisting] or obstructing a police officer."

The trial court granted the defendant's motion to suppress. The trial judge explained his decision by stating:

> "Officer Bautista, as many police officers, [has] acquired a divine sense of right and wrong. And although he could not actually see the exchange of money and drugs, he saw what appeared to be the exchange of money. And based on that sixth sense, maybe not divine sense, sixth sense, he believed that a drug sale was going on."

However, the trial judge stated that he could not say Bautista's observation was "grounds to believe a person is committing an offense thereby invoking the resisting or obstructing statute. That is just too tenuous." The judge concluded that more articulable facts were needed than existed in this case. The trial judge also stated that a ruling in favor of the State would mean that a person did not have the right to walk away any time a police officer saw "an exchange of hands, whether it was paying off a bet, buying drugs, a shake of hands, paying my share of whatever we had for dinner tonight."

Following this ruling, the State filed a timely notice of appeal and a certificate of impairment.

## STANDARD OF REVIEW

◾ Generally, a trial court's ruling on a motion to suppress evi-

dence is subject to reversal only if it is manifestly erroneous. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314 (1996). The State argues, however, that *de novo* review is appropriate in this case. It notes that the trial court did not make any rulings on credibility because the defendant presented the only testimony at the hearing and the credibility of the two witnesses was not questioned.

However, in this case, the defendant argued that the exchange Bautista observed did not give him a basis for stopping the defendant. In response, the State contended that Bautista approached the defendant only in an effort to conduct a consensual encounter. As a result, a factual dispute existed regarding Bautista's state of mind when he approached the defendant. A careful reading of the trial judge's comments shows that he found, based upon the reasonable inferences that he drew from the testimony, that Bautista approached the defendant with the intention of effecting a *Terry* stop. Consequently, it is clear from the record that the trial court decided a disputed question of fact.

■ Where more than one inference may be drawn from the facts, even uncontested facts, the question remains one for the trier of fact. *People v. Besser*, 273 Ill. App. 3d 164, 167, 652 N.E.2d 454, 456-57 (1995). The trial court's determination concerning factual matters, including the reasonable inferences to be drawn from the testimony, is entitled to deference (*People v. Luckett*, 273 Ill. App. 3d 1023, 1027, 652 N.E.2d 1342, 1345 (1995); *Besser*, 273 Ill. App. 3d at 167, 652 N.E.2d at 456), and this determination will not be disturbed on review unless manifestly erroneous (*People v. Free*, 94 Ill. 2d 378, 401, 447 N.E.2d 218, 229 (1983); *People v. Hamilton*, 251 Ill. App. 3d 655, 660, 622 N.E.2d 130, 134 (1993)). It is only when neither the *facts* nor the credibility of witnesses is questioned that *de novo* review is appropriate. See *Dilworth*, 169 Ill. 2d at 201, 661 N.E.2d at 314; *People v. Anaya*, 279 Ill. App. 3d 940, 944-45, 665 N.E.2d 525, 528 (1996). Based upon the cases cited, we conclude that this court must give deference to the trial court's findings of fact and reverse its determination only if it is manifestly erroneous.

## ANALYSIS

■ The fourth amendment to the United States Constitution provides that the Federal government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The fundamental purpose of this amendment is to safeguard the privacy and security of individuals against *arbitrary* invasions by governmental officials. *Dilworth*, 169 Ill. 2d at 201, 661 N.E.2d at

314. The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) extended this constitutional guarantee to searches and seizures conducted by State officials. *Dilworth*, 169 Ill. 2d at 201, 661 N.E.2d at 314.

In the instant case, the trial court found that Bautista approached the defendant in order to effect a *Terry* stop. Based on our review of the record, we conclude that this finding is not manifestly erroneous. The evidence shows that Bautista started walking toward the defendant, identified himself as a State Police officer and told the defendant to stop.

■ A police officer may make a valid investigatory stop absent probable cause for an arrest when the officer's decision is based on specific, articulable facts which warrant the investigative stop intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1879-80 (1968); *People v. Stewart*, 242 Ill. App. 3d 599, 605, 610 N.E.2d 197, 202 (1993). The police officer must have an "articulable suspicion" that the person has committed or is about to commit a crime. *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884; *Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202. Mere hunches and unparticularized suspicions are not enough. *Terry*, 392 U.S. at 22, 27, 20 L. Ed. 2d at 906, 909, 88 S. Ct. at 1880, 1883; *Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202.

■ Here, in this case, both Bautista and Williams testified that criminal activity had previously occurred at Gibbs Tavern. Bautista also testified that he was 75 to 100 feet away when he saw what appeared to be an exchange of money. However, he admitted that, because of the distance and lack of light, he was not able to tell if the apparent exchange was part of an illegal transaction. The trial court noted that, besides the possibility of a drug buy, this exchange could have merely been the paying off of a bet, splitting the cost of dinner or even a simple shake of hands. The trial court concluded that there were not enough articulable facts present to warrant Bautista's attempt to effect a *Terry* stop. We agree with the trial judge's analysis.

In fact, the State conceded during oral argument that Bautista did not have sufficient articulable facts to justify a *Terry* stop at the time he approached the defendant. However, the State contends on appeal that the defendant's flight from Bautista justified Williams' seizure of the defendant pursuant to the "resisting and obstructing" statute, section 31—1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/31—1(a) (West 1994)). Section 31—1(a) provides that a "person who knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any *authorized* act within his official capacity commits a Class A misdemeanor." (Emphasis added.) 720 ILCS 5/31—1(a) (West 1994).

We agree with the trial court that this statute does not apply to the facts presented in this case. When a police officer approaches a person to make a *Terry* stop without sufficient articulable facts to warrant the stop, the officer's actions are not "justified at the inception." See *People v. Sinclair*, 281 Ill. App. 3d 131, 136, 666 N.E.2d 1221, 1225 (1996). In this circumstance, a person who runs away is not resisting or obstructing an authorized act of the police officer.

The State contends, however, that even an unlawful arrest is an authorized act for purposes of resisting or obstructing an officer. See *People v. Villareal*, 152 Ill. 2d 368, 374-75, 604 N.E.2d 923, 926 (1992); *People v. Locken*, 59 Ill. 2d 459, 464-65, 322 N.E.2d 51, 54 (1974). We conclude that the reasoning of *Villareal* and *Locken* has no application to this case. In both *Villareal* and *Locken*, our supreme court relied upon section 7—7 of the Code (720 ILCS 5/7—7 (West 1994)), which specifically states that a person is not authorized to resist an arrest even if the arrest is unlawful. *Villareal*, 152 Ill. 2d at 374, 604 N.E.2d at 925-26; *Locken*, 59 Ill. 2d at 464-65, 322 N.E.2d at 54. Because Bautista was not making an arrest when the defendant ran away, section 7—7 of the Code does not apply here.

We are also not persuaded by the cases cited by the State where the defendants were properly seized or arrested following their flight from a police officer. In those cases, the trial court found, and the reviewing court agreed, that the initial actions of the police were justified. *Cf. People v. Holdman*, 73 Ill. 2d 213, 220-21, 383 N.E.2d 155, 158-59 (1978); *People v. Jones*, 245 Ill. App. 3d 302, 306-07, 613 N.E.2d 354, 357 (1993); *People v. Morales*, 221 Ill. App. 3d 13, 17, 581 N.E.2d 730, 733-34 (1991); *People v. Jackson*, 96 Ill. App. 3d 1057, 1060, 422 N.E.2d 195, 198 (1981); *People v. Montgomery*, 53 Ill. App. 3d 298, 302, 368 N.E.2d 752, 755 (1977). None of the cases cited by the State support a conclusion that a defendant's flight following an *unjustified* police action can be the basis of a proper seizure. As stated by Professor LaFave:

> "The flight of a person from the presence of police is not standing alone sufficient to establish probable cause, unless of course the circumstances are such that the flight from the officer itself constitutes a crime. Were it otherwise, 'anyone who does not desire to talk to the police and who either walks or runs away from them would always be subject to legal arrest,' which can hardly 'be countenanced under the Fourth and Fourteenth Amendments.'" 2 W. LaFave, Search & Seizure § 3.6(e), at 323-24 (3d ed. 1996).

After giving the appropriate deference to the trial court's findings of fact, we cannot conclude that the trial court manifestly erred

when it found the defendant had met his burden of showing that the seizure and search of his person were unreasonable and violated his rights under the fourth amendment.

Accordingly, we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

HOLDRIDGE and HOMER, JJ., concur.