No. 3--96--0608

_________________________________________________________________

                                IN THE

                               APPELLATE COURT OF ILLINOIS

                               THIRD DISTRICT

                               A.D. 1997

_________________________________________________________________

THE PEOPLE OF THE STATE OF     )   Appeal from the Circuit Court

ILLINOIS,                      )   of the 21st Judicial Circuit,

                               )   Kankakee County, Illinois

     Plaintiff-Appellant,      )   

                               )

        v.                     )   No. 95--CF--433

                               )

FA-RD MOORE,                   )   Honorable

                               )   Daniel W. Gould, 

     Defendant-Appellee.       )   Judge Presiding

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

     Pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R.

604(a)(1)), the State appeals from an order of the circuit court of

Kankakee County which granted a motion to suppress evidence filed

by the defendant, Fa-Rd Moore.  The State argues that the trial

court erred when it granted the motion to suppress.  Following our

careful review of the record, we affirm.

                                   FACTS                         

     The defendant was charged by indictment with unlawful

possession of more than 1 gram but less than 15 grams of a

substance containing cocaine with intent to deliver (720 ILCS

570/401(c)(2) (West 1994)).  The defendant filed a motion to

suppress evidence which alleged that the search of his person was

in violation of his fourth amendment rights. 

     A hearing was held on the defendant's motion on June 28, 1996. 

The defendant called two witnesses, David Williams and Ruben

Bautista.  Williams testified that he was a police officer with the

sheriff's department.  On July 18, 1995, he was participating with

officers from various jurisdictions in a detail to identify gang

members.   As part of this detail, he went to Gibbs Tavern in

Hopkins Park, Pembroke Township.  Williams testified that he had

been at Gibbs Tavern many times because of criminal activity at

that location.

     Williams saw a male subject, later identified as the

defendant, running in front of the tavern.  He saw Officer Bautista

chasing the defendant and heard Bautista say, "stop, police." 

Williams joined in the chase and also told the defendant to stop. 

     Bautista testified that he was an officer with the Illinois

State police.  On July 18, 1995, he was assigned to the gang crime

unit.  Bautista was wearing a gang tactical outfit consisting of a

State police T-shirt with a badge on his left chest, a web gear

belt with a badge and radios and a State police ball cap.  Bautista

arrived at Gibbs Tavern at approximately 11:40 p.m.  Bautista

stated that the tavern was frequented by gang members and that many

narcotic activities and shootings have occurred at that location. 

     Bautista saw the defendant next to a van parked in front of

the tavern entrance.  The defendant was talking to someone sitting

inside the van.  Bautista, who was 75 to 100 feet away, then saw

what appeared to be an exchange of money.  Bautista testified that

he was not able to tell who was giving or receiving the money or if

anything else was exchanged.  He admitted that, because of the

distance and lack of light, he was not able to determine if the

exchange he saw was part of an illegal transaction.  

     Bautista testified that after making his observation, he began

walking toward the van.  He said the defendant saw him approaching

and began to walk away from the van.  Bautista advised the

defendant that he was a State police officer.  The defendant began

to walk faster, and Bautista started to chase him.  The defendant

started running and turned into an alleyway.  Williams joined in

the chase and was able to tackle the defendant.  A plastic bag of

cocaine was found on the defendant as a result of a pat down search

for weapons conducted by Williams.  

     Following Bautista's testimony, defense counsel argued that

the police did not have any indication that the defendant was

involved in a crime prior to the chase.  The State contended that

Bautista was  approaching the defendant to ask him questions and

properly seized the defendant based upon his "attempt to elude the

police in violation of our statute prohibiting [resisting] or

obstructing a police officer."   

     The trial court granted the defendant's motion to suppress. 

The trial judge explained his decision by stating:

                               "Officer Bautista, as many police

          officers, [has] acquired a divine sense of

          right and wrong.  And although he could not

          actually see the exchange of money and drugs,

          he saw what appeared to be the exchange of

          money.  And based on that sixth sense, maybe

          not divine sense, sixth sense, he believed

          that a drug sale was going on."

          However, the trial judge stated that he could not say Bautista's

observation was "grounds to believe a person is committing an

offense thereby invoking the resisting or obstructing statute. 

That is just too tenuous."  The judge concluded that more

articulable facts were needed than existed in this case.  The trial

judge also stated that a ruling in favor of the State would mean

that a person did not have the right to walk away any time a police

officer saw "an exchange of hands, whether it was paying off a bet,

buying drugs, a shake of hands, paying my share of whatever we had

for dinner tonight."  

     Following this ruling, the State filed a timely notice of

appeal and a certificate of impairment.

                            STANDARD OF REVIEW

     Generally, a trial court's ruling on a motion to suppress

evidence is subject to reversal only if it is manifestly erroneous. 

People v. Dilworth, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314

(1996).  The State argues, however, that de novo review is

appropriate in this case.  It notes that the trial court did not

make any rulings on credibility because the defendant presented the

only testimony at the hearing and the credibility of the two

witnesses was not questioned.  

     However, in this case, the defendant argued that the exchange

Bautista observed did not give him a basis for stopping the

defendant.  In response, the State contended that Bautista

approached the defendant only in an effort to conduct a consensual

encounter.  As a result, a factual dispute existed regarding

Bautista's state of mind when he approached the defendant.  A

careful reading of the trial judge's comments shows that he found,

based upon the reasonable inferences that he drew from the

testimony, that Bautista approached the defendant with the

intention of effecting a Terry stop.  Consequently, it is clear

from the record that the trial court decided a disputed question of

fact.

     Where more than one inference may be drawn from the facts,

even uncontested facts, the question remains one for the trier of

fact.  People v. Besser, 273 Ill. App. 3d 164, 167, 652 N.E.2d 454,

456-57 (1995).  The trial court's determination concerning factual

matters, including the reasonable inferences to be drawn from the

testimony, is entitled to deference (People v. Luckett, 273 Ill.

App. 3d 1023, 1027, 652 N.E.2d 1342, 1345 (1995); Besser, 273 Ill.

App. 3d at 167, 652 N.E.2d at 456), and this determination will not

be disturbed on review unless manifestly erroneous (People v. Free,

94 Ill. 2d 378, 401, 447 N.E.2d 218, 229 (1983); People v.

Hamilton, 251 Ill. App. 3d 655, 660, 622 N.E.2d 130, 134 (1993)). 

It is only when neither the facts nor the credibility of witnesses

is questioned that de novo review is appropriate.  See Dilworth,

169 Ill. 2d at 201, 661 N.E.2d at 314; People v. Anaya, 279 Ill.

App. 3d 940, 944-45, 665 N.E.2d 525, 528 (1996).  Based upon the

cases cited, we conclude that this court must give deference to the

trial court's findings of fact and reverse its determination only

if it is manifestly erroneous.

                                 ANALYSIS

     The fourth amendment to the United States Constitution

provides that the Federal government shall not violate "[t]he right

of the people to be secure in their persons, houses, papers, and

effects, against unreasonable searches and seizures ***."  U.S.

Const., amend. IV.  The fundamental purpose of this amendment is to

safeguard the privacy and security of individuals against arbitrary

invasions by governmental officials.  Dilworth, 169 Ill. 2d at 201,

661 N.E.2d at 314.  The due process clause of the fourteenth

amendment (U.S. Const., amend. XIV) extended this constitutional

guarantee to searches and seizures conducted by State officials. 

Dilworth, 169 Ill. 2d at 201, 661 N.E.2d at 314.  

     In the instant case, the trial court found that Bautista

approached the defendant in order to effect a Terry stop.  Based on

our review of the record, we conclude that this finding is not

manifestly erroneous. The evidence shows that Bautista started

walking toward the defendant, identified himself as a State police

officer and told the defendant to stop.  

     A police officer may make a valid investigatory stop absent

probable cause for an arrest when the officer's decision is based

on specific, articulable facts which warrant the investigative stop

intrusion.  Terry v. Ohio, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906,

88 S. Ct. 1868, 1879-80 (1968); People v. Stewart, 242 Ill. App. 3d

599, 605, 610 N.E.2d 197, 202 (1993).  The police officer must have

an "articulable suspicion" that the person has committed or is

about to commit a crime.  Terry, 392 U.S. at 30, 20 L. Ed. 2d at

911, 88 S. Ct. at 1884; Stewart,  242 Ill. App. 3d at 605, 610

N.E.2d at 202.  Mere hunches and unparticularized suspicions are

not enough.  Terry, 392 U.S. at 22, 27, 20 L. Ed. 2d at 906, 909,

88 S. Ct. at 1880, 1883; Stewart, 242 Ill. App. 3d at 605, 610

N.E.2d at 202. 

     Here, in this case, both Bautista and Williams testified that

criminal activity had previously occurred at Gibbs Tavern. 

Bautista also testified that he was 75 to 100 feet away when saw

what appeared to be an exchange of money.  However, he admitted

that, because of the distance and lack of light, he was not able to

tell if the apparent exchange was part of an illegal transaction. 

The trial court noted that, besides the possibility of a drug buy,

this exchange could have merely been the paying off of a bet,

splitting the cost of dinner or even a simple shake of hands.  The

trial court concluded that there were not enough articulable facts

present to warrant Bautista's attempt to effect a Terry stop.  We

agree with the trial judge's analysis.  

     In fact, the State conceded during oral argument that Bautista

did not have sufficient articulable facts to justify a Terry stop

at the time he approached the defendant.  However, the State

contends on appeal that the defendant's flight from Bautista

justified Williams' seizure of the defendant pursuant to the

"resisting and obstructing" statute, section 31-1(a) of the

Criminal Code of 1961 (Code) (720 ILCS 5/31-1(a) (West 1994)). 

Section 31-1(a) provides that a "person who knowingly resists or

obstructs the performance by one known to the person to be a peace

officer *** of any authorized act within his official capacity

commits a Class A misdemeanor."  (Emphasis added.)  720 ILCS 5/31-

1(a) (West 1994).  

     We agree with the trial court that this statute does not apply

to the facts presented in this case.  When a police officer

approaches a person to make a Terry stop without sufficient

articulable facts to warrant the stop, the officer's actions are

not "justified at the inception."  See People v. Sinclair, 281 Ill.

App. 3d 131, 136, 666 N.E.2d 1221, 1225 (1996).  In this

circumstance, a person who runs away is not resisting or

obstructing an authorized act of the police officer.   

     The State contends, however,  that even an unlawful arrest is

an authorized act for purposes of resisting or obstructing an

officer.  See People v. Villareal, 152 Ill. 2d 368, 374-75, 604

N.E.2d 923, 926 (1992); People v. Locken, 59 Ill. 2d 459, 464-65,

322 N.E.2d 51, 54 (1974).  We conclude that the reasoning of

Villareal and Locken have no application to this case.  In both

Villareal and Locken, our supreme court relied upon section 7-7 of

the Code (720 ILCS 5/7-7 (West 1994)) which specifically states

that a person is not authorized to resist an arrest even if the

arrest is unlawful.  Villareal, 152 Ill. 2d at 374, 604 N.E.2d at

925-26; Locken, 59 Ill. 2d at 464-65, 322 N.E.2d at 54.  Because

Bautista was not making an arrest when the defendant ran away,

section 7-7 of the Code does not apply here.  

     We are also not persuaded by the cases cited by the State

where the defendants were properly seized or arrested following

their flight from a police officer.  In those cases, the trial

court found, and the reviewing court agreed, that the initial

actions of the police were justified.  Cf. People v. Holdman, 73

Ill. 2d 213, 220-21, 383 N.E.2d 155, 158-59 (1978); People v.

Jones, 245 Ill. App. 3d 302, 306-07, 613 N.E.2d 354, 357 (1993);

People v. Morales, 221 Ill. App. 3d 13, 17, 581 N.E.2d 730, 733-34

(1991); People v. Jackson, 96 Ill. App. 3d 1057, 1060, 422 N.E.2d

195, 198 (1981); People v. Montgomery, 53 Ill. App. 3d 298, 302,

368 N.E.2d 752, 755 (1977).  None of the cases cited by the State

support a conclusion that a defendant's flight following an

unjustified police action can be the basis of a proper seizure.  As

stated by Professor LaFave:

                               "The flight of a person from the presence

          of police is not standing alone sufficient to

          establish probable cause, unless of course the

          circumstances are such that the flight from

          the officer itself constitutes a crime.  Were

          it otherwise, 'anyone who does not desire to

          talk to the police and who either walks or

          runs away from them would always be subject to

          legal arrest,' which can hardly 'be

          countenanced under the Fourth and Fourteenth

          Amendments.'"  (Footnotes omitted.)  2 W.

          LaFave, Search & Seizure §3.6(e), at 323-24

          (3d ed. 1996).   

                               After giving the appropriate deference to the trial court's

findings of fact, we cannot conclude that the trial court

manifestly erred when it found the defendant had met his burden of

showing that the seizure and search of his person were unreasonable

and violated his rights under the fourth amendment.  

     Accordingly, we affirm the judgment of the circuit court of

Kankakee County.

      Affirmed.

     HOLDRIDGE and HOMER, JJ., concur.